STATE OF CONNECTICUT *v.* ALPHONZIE PERRY
(11143)

PETERS, C. J., HEALEY, PARSKEY, SHEA and DANNEHY, Js.

Argued January 9—decision released March 19, 1985

*John S. Pinney,* with whom, on the brief, were *Thomas E. Gaffey* and *Sara L. Bernstein,* for the appellant (defendant).

*Jonathan C. Benedict,* assistant state's attorney, with whom, on the brief, was *Donald A. Browne,* state's attorney, for the appellee (state).

SHEA, J. On June 10, 1980, Edmund Kish was shot and killed at a package store in Bridgeport. The cash register at the scene of the homicide was found open and empty when the body was discovered. In connection with this incident, the defendant was convicted of felony murder in violation of General Statutes § 53a-54c[1] and sentenced to incarceration for twenty-three years to life.

---

[1] General Statutes § 53a-54c provides: "FELONY MURDER. A person is guilty of murder when, acting either alone or with one or more persons, he commits or attempts to commit robbery, burglary, kidnapping, sexual assault in the first degree, sexual assault in the first degree with a firearm, sexual assault in the third degree, sexual assault in the third degree with a firearm, escape in the first degree, or escape in the second degree and, in the course of and in furtherance of such crime or of flight therefrom, he, or another participant, if any, causes the death of a person other than one of the participants, except that in any prosecution under this section, in which the defendant was not the only participant in the underlying crime, it shall be an affirmative defense that the defendant: (A) Did not commit the homicidal act or in any way solicit, request, command, importune, cause or aid the commission thereof; and (B) was not armed with a deadly weapon, or any dangerous instrument; and (C) had no reasonable ground to believe that any other participant was armed with such a weapon or instrument; and (D) had no reasonable ground to believe that any other participant intended to engage in conduct likely to result in death or serious physical injury."

In this appeal, the defendant claims that his conviction must be overturned because the trial court erred (1) in failing to suppress the incriminating statement he made to the police, (2) in admitting evidence of other crimes allegedly committed by the defendant, and (3) in unreasonably restricting his cross-examination of a police officer regarding prior misconduct by the officer. We find no error in the trial court's rulings and affirm the conviction.

## I

The defendant advances several grounds for the exclusion of his incriminating statement. First, the defendant contends that the statement should be suppressed as the fruit of an unlawful arrest. Second, the defendant argues that the statement must be suppressed under General Statutes § 54-1c because he was not advised of his right to bail before the statement was made. Finally, the defendant maintains that, even if these prophylactic rules were not broken, his confession cannot under all the circumstances be considered voluntary. We find none of the defendant's arguments persuasive.

## A

The defendant's first ground for exclusion is premised on the proposition that where there is no probable cause to believe a suspect has committed a crime at the time of his arrest, any statements obtained as a result of the arrest must be excluded from evidence.[2] We agree with the legal principle advanced by

---

[2] The defendant attempts to strengthen his claim that there was no probable cause to arrest him at the time of his arrest by questioning whether the arrest was made pursuant to a warrant, and hence whether this court should accord any deference to the probable cause determination made in issuing the warrant. Because the arrest took place on a public street, the arrest would have been legal even without a warrant so long as the arresting officers had probable cause. General Statutes § 54-1f (b); *United States* v. *Watson*, 423 U.S. 411, 96 S. Ct. 820, 46 L. Ed. 2d 598 (1976). The trial

the defendant, but not with his application of it to this case. "It is clear under recent decisions of the United States Supreme Court that a confession that is found to be voluntary for purposes of the fifth amendment has met only a threshold requirement for fourth amendment analysis. With respect to the fourth amendment, the further test is whether there is so close a causal connection between an illegal arrest and a confession that the confession must be suppressed in order to deter similar police misconduct in the future and to protect the integrity of the courts." (Citations omitted.) *State* v. *Derrico,* 181 Conn. 151, 157, 434 A.2d 356, cert. denied, 449 U.S. 1064, 101 S. Ct. 789, 66 L. Ed. 2d 607 (1980); see also *State* v. *Ostroski,* 186 Conn. 287, 440 A.2d 984, cert. denied, 459 U.S. 878, 103 S. Ct. 173, 74 L. Ed. 2d 142 (1982). The state argues not that there were intervening circumstances sufficiently separating the incriminating statement from the arrest; see, e.g., *United States* v. *Crews,* 445 U.S. 463, 100 S. Ct. 1244, 63 L. Ed. 2d 537 (1980); but rather that the arrest itself was lawful. We agree.

A lawful arrest must be based on probable cause. " '[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules.' *Illinois* v. *Gates,* 462 U.S. 213, 232, 103 S. Ct. 2317, 76 L. Ed. 2d 527, reh. denied, 463 U.S. 1237, 104 S. Ct. 33, 77 L. Ed. 2d 1453 (1983). . . . The determination of probable cause must be made from the 'totality of the circumstances.' *Illinois* v. *Gates,* supra, 230." *State* v. *Gasparro,* 194 Conn.

court resolved the factual issue by finding that the defendant had in fact been arrested on a warrant. Because we have concluded that the defendant's claim is without merit even without the deference we customarily accord the determinations of probable cause made by magistrates; *State* v. *Heinz,* 193 Conn. 612, 617–18, 480 A.2d 452 (1984); *State* v. *Jackson,* 162 Conn. 440, 294 A.2d 517, cert. denied, 409 U.S. 870, 93 S. Ct. 198, 34 L. Ed. 2d 121 (1972); we need not consider the issue further.

96, 105–106, 480 A.2d 509 (1984); see also *Massachusetts* v. *Upton,* 466 U.S. 727, 104 S. Ct. 2085, 80 L. Ed. 2d 721 (1984). We are convinced that the several pieces of information available to the police at the time of the defendant's arrest combined to meet this standard. The police had at the time of the arrest a statement from one Luther Fleming that identified the defendant as Fleming's companion at the scene and served also to incriminate the defendant. While Fleming's statement was for the most part self-serving and exculpatory as to himself, the police were justified in placing some reliance on the portions of the statement implicating the defendant. The police also had independent confirmation by an eyewitness of the involvement of Fleming and a companion in the crime, and the statement of a confidential informant, who had proved reliable in the past, that the defendant had admitted shooting the victim. The reliability of the informant's statement is enhanced by the fact that the informant, who appears to have gained all of his information about the crime from the defendant, also named Fleming as the operator of the car involved in the crime. See *Draper* v. *United States,* 358 U.S. 307, 79 S. Ct. 329, 3 L. Ed. 2d 327 (1959). Regardless of the sufficiency of any of these sources standing alone to establish probable cause, the totality of them adequately supported the trial court's finding, "that the defendant was legally arrested." See *Illinois* v. *Gates,* supra, 241–46. Thus the arrest provides no basis for the suppression of the defendant's incriminating statement.

## B

Perhaps the most troublesome of the defendant's claims of error rests on his interpretation of General Statutes § 54-1c as mandating the inadmissibility of any confession taken before an accused is informed of his right to be interviewed concerning the terms and conditions of release as required by General Statutes

§ 54-63c.[3] In order to succeed in his claim of statutory exclusion, the defendant must establish a nexus between § 54-1c,[4] which renders inadmissible any statement obtained from an accused who has not been presented for arraignment at the proper time "or who has not been informed of his rights as provided by section 54-1b or section 54-64b," and § 54-63c,[5] which requires that the police inform an accused of his right to bail "promptly" after arrest. The defendant points out that

[3] The defendant also claims that Practice Book § 656 was violated by the failure to advise him of his bail rights before his statement was taken. We read the requirements of the Practice Book in this area as parallel to and implementing the General Statutes rather than as imposing separate and different requirements. Moreover, the Practice Book states no consequence for the failure to abide by § 656 and therefore provides no basis for exclusion of the defendant's statement aside from those discussed and rejected in the opinion.

[4] General Statutes § 54-1c: "ADMISSIBILITY OF CONFESSION. Any admission, confession or statement, written or oral, obtained from an accused person who has not been presented to the first session of the court, or on the day specified for arraignment under the provisions of section 54-1g, or who has not been informed of his rights as provided by section 54-1b or section 54-64b, shall be inadmissible."

[5] General Statutes § 54-63c (a) provides: "Except in cases of arrest pursuant to a bench warrant of arrest in which the court or a judge thereof has indicated that bail should be denied or ordered that the officer or indifferent person making such arrest shall, without undue delay, bring such person before the clerk or assistant clerk of the superior court for the geographical area under section 54-2a, when any person is arrested for a bailable offense, the chief of police, or his authorized designate, of the police department having custody of the arrested person shall promptly advise such person of his rights under section 54-1b, and of his right to be interviewed concerning the terms and conditions of release. Unless the arrested person waives or refuses such interview, the police officer shall promptly interview the arrested person to obtain information relevant to the terms and conditions of his release from custody, and shall seek independent verification of such information where necessary. At the request of the arrested person, his counsel may be present during the interview. After such a waiver, refusal or interview, the police officer shall promptly order release of the arrested person upon his execution of a written promise to appear or his posting of such bond as may be set by the police officer, except that no condition of release set by the court or a judge thereof may be modified by such officer. If the arrested person has not posted bail, the police officer shall immediately notify a bail commissioner."

subsection (b) of § 54-64b,[6] explicitly referenced by § 54-1c, requires that the provisions of § 54-63c be followed "without undue delay." The defendant argues

[6] General Statutes § 54-64b provides: "RELEASE FOLLOWING ARREST ON COURT WARRANT. (a) When any person is arrested on a bench warrant of arrest issued by order of the superior court or, when said court is not in session, by a judge thereof, in which the court or judge issuing the warrant indicated that bail should be denied or ordered that the person to be arrested should be brought before a clerk or assistant clerk of the superior court, the officer or indifferent person making the arrest shall without undue delay bring the arrested person before the clerk or assistant clerk of the superior court for the geographical area where the offense is alleged to have been committed during the office hours of the clerk and if the clerk's office is not open, the officer or indifferent person shall, without undue delay, bring the arrested person to a community correctional center within the geographical area where the offense is alleged to have been committed or, if there is no such correctional center within such geographical area, to the nearest community correctional center. The clerk or assistant clerk or a person designated by the commissioner of correction shall thereupon advise the arrested person of his rights under section 54-1b, and, when the court or judge has not indicated that bail should be denied, shall order the arrested person to enter into the condition of release pursuant to the condition fixed by the judge or court conditioned that the arrested person shall appear before the superior court having criminal jurisdiction in and for the geographical area to answer to the bench warrant of arrest and information filed in the case. Upon the failure of the arrested person to enter into the condition of release fixed by the court or judge or if the person has been arrested for an offense which is not bailable, the clerk or assistant clerk or the person designated by the commissioner of correction shall issue a mittimus committing the arrested person to a community correctional center until he is discharged by due course of law.

"(b) When any person is arrested on a bench warrant of arrest issued by order of the superior court or by a judge thereof, in which the court or judge has not indicated that bail should be denied or has not ordered that the officer or indifferent person making such arrest shall without undue delay bring such person before the clerk or assistant clerk of the superior court for the geographical area, the officer or indifferent person making the arrest shall without undue delay, comply with the provisions of sections 54-63c, and 54-63d in setting the conditions of release for the person or persons arrested under the warrant.

"(c) The clerk or assistant clerk and the person designated by the commissioner of correction may take a written promise to appear on a bond without or with surety from an arrested person in accordance with the conditions of release fixed by the court or judge and may administer such oaths as are necessary in the taking of promises or bonds."

that this nexus is sufficient to require the exclusionary effects of § 54-1c unless compliance with § 54-63c is established.

In order to reach this question the defendant must, and does, attack the trial court's finding that the defendant had adequately been apprised of his bail rights. If this finding stands, there would be no reason to decide whether the failure to give the warnings would render a confession inadmissible. The evidence most supportive of the trial court's finding shows only that the defendant was at some point informed that his bail would be set at $100,000. The state conceded at oral argument that this warning was insufficient to inform the defendant of the full panoply of rights contemplated by § 54-63c. The statute requires that the accused person be told of his right to be interviewed concerning release and his right to have counsel present at the interview. The trial court's finding that these rights were given to the defendant has no foundation in the evidence and must be considered clearly erroneous. Practice Book § 3060D.

Even so, it does not follow that the incriminating statement given is inadmissible unless the exclusionary effect of § 54-1c applies to violations of § 54-63c. We find no such relationship between the statutes and for that reason reject the defendant's call for exclusion. When General Statutes § 54-1c was initially adopted in 1963, it contained no reference to § 54-64b, the latter statute not being in existence. The initial version of § 54-1c referred only to the rights granted by § 54-1b, which at that time required the judicial authority at the time of arraignment to set bail as well as advise the accused of his right to an attorney, of his right to refuse to make a statement, and that any statement made might be introduced in evidence against him. See Public Acts 1963, No. 126. Several legislators recognized that the law applied only at the time of arraignment, a

different bill focusing on the time of arrest having failed of passage. See, e.g., 10 H. R. Proc., Pt. 5, 1963 Sess., p. 1731 (remarks of Rep. Benjamin L. Barringer). "It [Public Acts 1963, No. 126] is a bill that gives the rights to counsel at the critical moment when a person most needs counsel, namely at the point where he has just shortly thereafter [sic] been arrested, and where he is being brought for an arraignment." 10 H. R. Proc., Pt. 5, 1963 Sess., p. 1730 (remarks of Rep. Robert Satter). Significantly, it was also recognized that the bill was not coextensive with judicially mandated exclusions and that it referred to the actions of court officials rather than police officers. "[I]t may legitimately be said that an accused may have more rights under case law than this bill will give him. . . . [I]t will only provide some protection by requiring the judge or the clerk, as the case may be, if it's a bench warrant, to advise the accused of these rights." 10 S. Proc., Pt. 4, 1963 Sess., pp. 1444–45 (remarks of Sen. Paul J. Falsey). We have recognized the limited application of § 54-1c in *State* v. *Vollhardt*, 157 Conn. 25, 38–39, 244 A.2d 601 (1968), where we concluded that the statute required only that the defendant be advised of his rights "before he is put to plea," not before any confession is obtained.

When the legislature in 1967 enacted what is now General Statutes § 54-63c, requiring police officers and bail commissioners to make preliminary bail determinations before arraignment, it did *not* tie a violation of those provisions into the exclusionary rule of § 54-1c. See Public Acts 1967, No. 549. At that time, the exclusionary effects of § 54-1c applied only to violations of § 54-1b, requiring the court to, inter alia, set bail when appropriate. In 1980, a technical revision of the criminal statutes was passed which split off the portion of § 54-1b referring to bail and, with minor changes, designated it as § 54-64b. See Public Acts 1980, No. 80-313, §§ 13, 27, 28; 23 H. R. Proc., Pt. 19, 1980 Sess.,

pp. 5692–5700; 23 S. Proc., Pt. 6, 1980 Sess., pp. 1722–24. The revision incidentally added the reference to § 54-63c that we are now urged to interpret as calling into play the exclusionary effects of § 54-1c. We decline to do so.[7] Had the legislature intended that exclusionary effect, it could have plainly so provided. Technical revisions of the General Statutes are presumed to be just that, having no effect on the state of substantive law. See, e.g., *State ex rel. Willow Monument Works* v. *Mountain Grove Cemetery Assn.,* 168 Conn. 447, 452, 362 A.2d 1341 (1975); *Southington* v. *Francis,* 159 Conn. 64, 70, 266 A.2d 387 (1970). It is clear that prior to the 1980 amendment, there was no right to statutory exclusion based on the facts presented here. See *State* v. *Vollhardt,* supra. We do not interpret the 1980 technical revision as changing the law in this regard. Indeed, so to hold would be to create an anomalous distinction between those persons arrested on a warrant, who would be entitled to the added protections of General Statutes § 54-1c through the effects of §§ 54-64b and 54-63c, and those arrested without a warrant, who would have no such entitlement. Such a distinction might encourage warrantless arrests to avoid the effects of § 54-1c. We should seek to encourage just the opposite, so that the public is protected to the greatest possible degree by the judicial finding of probable cause preliminary to the issuance of an arrest warrant.

Similarly, we decline to establish a judicial rule of exclusion equating a violation of General Statutes

---

[7] We have assumed for the purposes of this opinion, as have the parties, that the 1980 technical revision, which took effect on October 1, 1980, applied retroactively to confessions given before that date, including the one at issue here, given on June 20, 1980. Because it is clear that the exclusionary effects of General Statutes § 54-1c did not apply to violations of § 54-63c before the 1980 technical revision and because we have determined that the technical revision was not intended to and did not change this result, we have no occasion to address the retroactivity issue.

§ 54-63c with a violation of the rights existing under the constitution as defined in *Miranda* v. *Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). Previously, we have held that while "[t]he right to be released on bail upon sufficient security is a fundamental constitutional right," the procedures implementing the right are of a statutory rather than a constitutional nature. *State* v. *Olds,* 171 Conn. 395, 404, 370 A.2d 969 (1976). While we could rule that exclusion is required in order to effectuate the purpose of the bail statutes and to deter conduct in violation of these statutes, we are not aware that the frequency or magnitude of such violations is so great as to warrant such a response. We believe that the continuing requirement that all confessions be voluntary in order to be admissible will guard against abuse of the bail statutes, as violations of those statutes would be relevant upon the coerciveness of the atmosphere surrounding the defendant's confession. Indeed, the statutes themselves, which mandate only that the right to bail warnings be given "without undue delay"; General Statutes § 54-64b (b); and "promptly"; General Statutes § 54-63c; appear to contemplate the type of case-by-case analysis proper to a voluntariness determination. Thus we cannot say that a prophylactic rule of automatic exclusion is necessitated by the nature of the right or the statute itself, and we are therefore unpersuaded by the second ground advanced by the defendant for the exclusion of his statement.

## C

Having rejected the applicability of the prophylactic rules advanced by the defendant, we are left with the final claim that the circumstances surrounding the giving of the defendant's statement were so coercive as to render the statement involuntary, and hence inadmissible. "It is the state's burden to prove by a preponderance of the evidence that the challenged confession

was made voluntarily. *Lego* v. *Twomey,* 404 U.S. 477, 92 S. Ct. 619, 30 L. Ed. 2d 618 (1972); *State* v. *Hawthorne,* 176 Conn. 367, 370, 407 A.2d 1001 (1978). The test of voluntariness is whether an examination of all the circumstances shows that the conduct of police was such as to overbear the defendant's will to resist and bring about a confession, not freely self-determined." (Citations omitted.) *State* v. *DeForge,* 194 Conn. 392, 397–98, 480 A.2d 547 (1984); see also *State* v. *Stankowski,* 184 Conn. 121, 131–32, 439 A.2d 918, cert. denied, 454 U.S. 1052, 102 S. Ct. 596, 70 L. Ed. 2d 588 (1981).

The defendant's version of the facts surrounding the making of his confession differs in almost every respect from that suggested by the state. It is apparent that the trial court found the contested facts against the defendant. In analyzing the defendant's claim, we take the facts as found by the trial court unless those findings are clearly erroneous. Practice Book § 3060D. "This court cannot retry the facts or pass upon the credibility of the witnesses. *Johnson* v. *Flammia,* 169 Conn. 491, 497, 363 A.2d 1048 (1975)." *State* v. *Hawthorne,* supra, 371. Thus we do not pass upon those claims of error that depend on the version of the facts advanced by the defendant, as those facts are not properly before us.[8]

---

[8] Among the defendant's claims which the trial court failed to credit were the failure to give *Miranda* warnings, the failure to waive *Miranda* rights, the failure to stop questioning when the defendant requested a lawyer, threats by police officers, and promises that the defendant would go free if he cooperated. Some of these claims would have required automatic exclusion under the rule of *Miranda* v. *Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), and others would have impacted on the voluntariness of the defendant's statement required by the fifth amendment to the United States constitution and article first, § 8, of the Connecticut constitution. The trial court credited the accounts of several police officers whose testimony refuted the defendant's claims. Questions of credibility of witnesses are primarily for the trier of fact. *State* v. *Hawthorne,* 176 Conn. 367, 371, 407 A.2d 1001 (1978). We recognize that we must scrutinize more

Even under the state's version of the events, however, the defendant points to two factors that he claims impinged upon the voluntariness of his incriminating statement. First, he notes the failure of the police to inform him of his right to be interviewed regarding his bail determination before the statement was made. Second, he claims that he was induced to make the statement by promises made to him by a police inspector. We agree with the trial court that under all the circumstances the state met its burden of proving voluntariness.

While we have refused to create a prophylactic exclusionary rule protecting a defendant from violations of the statutes regulating release on bail, as indicated in our previous discussion, such violations may be so egregious as to affect the voluntariness of a confession given before a defendant is informed of his rights. If a defendant is held for a period of time and given the impression that he has the choice only of remaining silent and in custody or giving a statement and possibly going free if he exculpates himself, the police have created an element of coercion that is not present if the defendant is told that he must be released, regardless of his silence, on only the bail necessary to ensure his appear-

---

closely the question of waiver of *Miranda* rights than we would most other factual determinations. " 'In the absence of an express waiver, the state bears the heavy burden of demonstrating, as a matter of fact, that "waiver can be clearly inferred from the actions and words of the person interrogated". . . . Although the issue is therefore ultimately factual, our usual deference to fact-finding by the trial court is qualified, on questions of this nature, by the necessity for a scrupulous examination of the record to ascertain whether such a factual finding is supported by substantial evidence. . . .' *State* v. *Harris,* 188 Conn. 574, 579–80, 452 A.2d 634 (1982)." *State* v. *Pellegrino,* 194 Conn. 279, 288–89, 480 A.2d 537 (1984). In this case, however, the trial court credited the express written waiver admittedly signed by the defendant. Moreover, we also have scrupulously examined the record to ascertain whether this finding of waiver is supported by substantial evidence before accepting it as fact. The record amply supports this finding.

ance in court. Nevertheless, we find no such coercion here. The defendant was in custody for a very brief period, a matter of minutes, before he agreed to give his statement; there was no intimation of prolonged detention that would build an atmosphere of coercion. Indeed, it is not even clear that the police failed to advise the defendant of his bail rights "promptly" or "without undue delay" as required by General Statutes § 54-63c or § 54-64b (b), respectively. Moreover, the defendant was partially informed of his rights when the police told him that his bail would be set at $100,000; he was aware of his right to release on bail but not its specifics. Under these facts, we find no element of coercion created by the absence of complete bail warnings before the defendant's statement was given.

The second aspect of the defendant's involuntariness claim focuses on comments by Inspector Fabrizzi immediately after the defendant admitted his involvement in the incident, but before his written statement was given. The inspector testified that the defendant first denied any connection to the crime, but when portions of Fleming's statement accusing him of shooting the victim were read, he became very upset and admitted being at the scene but denied going into the store or shooting anyone. It was then that the inspector asked for a formal statement and told the defendant that "it was important in the eyes of the law and went to his defense that he did not actually pull the trigger . . . . " The defendant claims that this comment constituted a promise intentionally and effectively suborning his will and coercing his incriminating statements. See *Bram* v. *United States,* 168 U.S. 532, 542, 18 S. Ct. 183, 42 L. Ed. 568 (1897). We disagree.

The trial court's conclusion that the defendant, through his exclamations when confronted with Fleming's statement, already had implicated himself and in essence agreed to counter Fleming's statement

with one of his own is not clearly erroneous. The trial court found that the decision to give a statement had been voluntarily made and was unaffected by Fabrizzi's comments. Without a causal relationship between the alleged promise and the incriminating statement, there is no basis for excluding the statement. "A confession, otherwise freely and voluntarily made, is not vitiated by a promise of leniency unless such promise was the motivating cause of the confession." (Citations omitted.) *State* v. *Tardiff,* 374 A.2d 598, 601 (Me. 1977). Even were the timing different, we would not be inclined to view Fabrizzi's comments under all the circumstances as a promise inducing the defendant's confession. At the same time he was told that not having pulled the trigger went to his defense, the defendant also was informed that he was being charged as a principal with the crime of felony murder. The defendant was given no specific assurances that giving a statement would affect the outcome of the criminal proceedings. "Encouraging a suspect to tell the truth and suggesting that his cohorts might leave him 'holding the bag' does not, as a matter of law, overcome a confessor's will . . . . Neither is a statement that the accused's cooperation will be made known to the court sufficient inducement so as to render a subsequent incriminating statement involuntary." *United States* v. *Ballard,* 586 F.2d 1060, 1063 (5th Cir. 1978). The defendant could not reasonably have understood Fabrizzi's remarks to do more than this. Several courts have held that remarks of the police far more explicitly indicating that a defendant's willingness to make a statement would be viewed favorably do not render his confession involuntary. "Such a statement [that accused's cooperation would be to his benefit] by a law enforcement officer falls *far* short of creating the 'compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so

freely.' " (Emphasis added.) *State* v. *Cydzik,* 60 Wis. 2d 683, 692, 211 N.W. 2d 421 (1973), quoting *State* v. *LaFernier,* 37 Wis. 2d 365, 377, 155 N.W. 2d 93 (1907); see also *State* v. *Vera,* 701 F.2d 1349, 1364 (11th Cir. 1983) ("agent's statement that it would be 'helpful' to sign a confession has been held insufficient by itself to render a confession involuntary"); *United States* v. *Morris,* 491 F. Sup. 226, 230 (S.D. Ga. 1980) (agent's comment that "if you cooperate, it will go easy on you" held not coercive).

Thus the trial court did not err in admitting the defendant's incriminating statement.

## II

The defendant also claims error in the admission, over objection, of evidence tending to show the defendant's complicity in criminal activity other than the incident at issue. The state claims that the contested evidence was properly admissible as relevant to the issue of intent to commit the crime.[9] We agree.

---

[9] The state also claims that the testimony of other crimes was within the proper bounds of cross-examination because the defendant put in issue the question of his propensity to commit crime. Earlier in the cross examination, the defendant had given the following testimony:

"Q. So you were nervous about being seen in the area when a robbery was about to happen?

"A. It wasn't that. I am not—I am just not a man of crime, sir. My record indicates that, sir.

"Q. So you are not a man of crime and your record indicates that?

"A. Yes, sir.

"Q. I will keep that in mind.
* * * *
"Q. No matter where the robbery would be, you never wanted to commit a robbery?

"A. No, sir, I never wanted to commit a robbery. I am not a man of crime."

The state claims on appeal that this testimony opened the door to its inquiry into all previous criminal activity of the defendant. See *State* v. *Glenn,* 194 Conn. 483, 498–99, 481 A.2d 741 (1984). Because we find the testimony admissible and relevant for the purpose of establishing an element of the crime, the purpose for which the trial court admitted it, we need not consider the issue further.

"Evidence of other misconduct, although not ordinarily admissible to prove the bad character or criminal tendencies of the accused, may be allowed for the purpose of proving many different things, such as intent, identity, malice, motive or a system of criminal activity. *State* v. *Falby,* 187 Conn. 6, 23, 444 A.2d 213 (1982); *State* v. *Barlow,* 177 Conn. 391, 393, 418 A.2d 46 (1979). 'That evidence tends to prove the commission of other crimes by the accused does not render it inadmissible if it is otherwise relevant and material.' *State* v. *Marshall,* 166 Conn. 593, 600, 353 A.2d 756 (1974). Where such evidence is offered in proof of an issue in the case, and not merely to show an evil disposition on the part of the accused, the trial court must still consider whether its prejudicial tendency outweighs its probative value before ruling upon its admissibility. *State* v. *Holliday,* 159 Conn. 169, 173, 268 A.2d 368 (1970) . . . . Our review is limited to whether this ruling exceeded the latitude accorded to the exercise of judicial discretion. *State* v. *Falby,* supra; *State* v. *Barlow,* supra, 394; *State* v. *Brown,* 169 Conn. 692, 702, 364 A.2d 186 (1975)." *State* v. *Ibraimov,* 187 Conn. 348, 352, 446 A.2d 382 (1982).

The defendant in this case admitted through his statements and his testimony that he was present at the scene of the crime. His defense was that he had no intent to commit any crime or to further his companion's intent to do so. It is the state's burden to prove every element of the crime, including intent; *In re Winship,* 397 U.S. 358, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970); and when the defendant contests the issue, the probative value of evidence of other misconduct tending to show that the defendant may have had the requisite intent may outweigh the prejudicial effect inherent in the admission of such evidence. See, e.g., *State* v. *Falby,* 187 Conn. 6, 21–24, 444 A.2d 213 (1982); *State* v. *Amaral,* 179 Conn. 239, 244–45, 425 A.2d 1293

(1979); *State* v. *Barlow,* 177 Conn. 391, 393–94, 418 A.2d 46 (1979). Such is the case here. The evidence of other crimes was admitted in the form of testimony by the defendant on cross-examination. Thus there is no question but that the clear and convincing standard of proof for establishing the defendant's complicity in the other crimes was met. See *State* v. *Falby,* supra, 23. The evidence itself, concerning several robberies in the area where the instant crime occurred in which the defendant and Fleming as well as others participated, was very probative on the issue of the defendant's state of mind, tending to negate his claims of duress and ignorance of his companion's criminal intent. The trial court strictly limited the state's opportunity to expand on the other crimes evidence, and defense counsel was given a full opportunity to rehabilitate the defendant and explain his testimony. While there was a risk of prejudice in allowing the testimony of other crimes, the evidence had significant probative value and we cannot conclude that the trial court abused its discretion in admitting it.

### III

The defendant's final claim concerns his attempt to impeach the credibility of a police officer who testified as a witness at trial. Through an offer of proof the defendant was able to establish that the officer had, eight years before the trial, been found to have violated police rules prohibiting conduct unbecoming a patrolman and making an arrest in a personal matter. The violations arose from an incident in which the officer became involved in a fight with another patron of a bar and arrested his adversary. The court refused to admit the evidence and the defendant claims error, arguing that the evidence was admissible to impeach the credibility of the witness. We disagree.

In *State* v. *Januszewski,* 182 Conn. 142, 170–74, 438 A.2d 679 (1980), cert. denied, 453 U.S. 922, 101 S. Ct. 3159, 69 L. Ed. 2d 1001 (1981), we recognized the right of a criminal defendant fully to cross-examine all witnesses against him, including police officers, and we ordered in camera inspection of police personnel records to determine whether information relevant to the issues in the case should be made available to the defendant. Nowhere in that opinion did we indicate, however, that evidence not relevant should be disclosed or admitted. In fact, we stated just the opposite. "The trial court should make available to the defendant only information that it concludes is clearly material and relevant to the issue involved." *State* v. *Januszewski,* supra, 173. We intimated then, and rule now, that a police officer who testifies as a witness is subject to cross-examination of the same nature as any other witness. A lay witness would not be subject to cross-examination concerning collateral bad acts unless they involved veracity; *State* v. *Orsini,* 187 Conn. 264, 268, 445 A.2d 887, cert. denied 459 U.S. 861, 103 S. Ct. 136, 74 L. Ed. 2d 116 (1982); and there is no reason why the rule should be changed for police officers. The defendant proffers the theory that, as to a police officer or anyone else sworn to uphold the law, any breach of law (or rules having the force of law) establishes a lack of veracity sufficient to justify its admission before the jury. Regardless of whether some type of conduct showing a lack of respect for the law may be sufficient to reflect upon the credibility of one sworn to uphold the law, the conduct here involved is not of that character. The mere fact that a police officer has been found to have on one occasion violated police rules cannot be said to establish the existence of such a lack of respect adequate to call into question the sincerity of his prior oath. Nothing in the defendant's offer of proof sug-

gested a lack of veracity or credibility and the cross-examination as to collateral bad acts was properly excluded.

There is no error.

In this opinion the other judges concurred.