## STATE OF CONNECTICUT *v.* CHONG CHUNG
## (12312)

PETERS, C. J., HEALEY, SHEA, S. FREEDMAN and STOUGHTON, Js.

Argued October 7, 1986—decision released January 13, 1987

*Michael R. Sheldon,* with whom were *Todd D. Fernow* and, on the brief, *Steven G. Murphy, Michael A. Gailor, Mark W. Freel* and *Bruce A. Barket,* certified legal interns, for the appellant (defendant).

*Judith Rossi,* deputy assistant state's attorney, with whom, on the brief, were *David Cohen,* assistant state's attorney, and *James G. Clark,* deputy assistant state's attorney, for the appellee (state).

ARTHUR H. HEALEY, J. The defendant, Chong Chung, was convicted upon a conditional plea of nolo

contendere[1] to an indictment charging him with the crime of felony murder in violation of General Statutes § 53a-54c.[2] The court sentenced the defendant to thirty years imprisonment. On appeal, the defendant claims that the trial court erred in denying his motion to suppress his statements made to the police on June 18, 1982. We find no error.

The evidence adduced before the court necessary to our disposition of the defendant's claim is as follows: On March 23, 1982, the police in Westport received a report from the victim's wife that the victim, the owner of a Westport restaurant, had not returned home from work as expected. When the Westport police went to the restaurant to investigate, they found the interior of the restaurant in disarray. Upon further investigation, the police discovered the body of the victim outside a side door. The victim's throat had been cut and he had been shot twice.

---

[1] The defendant originally pleaded not guilty to the charge of felony murder but later changed that plea to a conditional plea of nolo contendere. See General Statutes § 54-94a. The defendant also was charged by information with the crime of robbery in the first degree in violation of General Statutes § 53a-134. The latter charge was nolled.

[2] "[General Statutes] Sec. 53a-54c. FELONY MURDER. A person is guilty of murder when, acting either alone or with one or more persons, he commits or attempts to commit robbery, burglary, kidnapping, sexual assault in the first degree, sexual assault in the first degree with a firearm, sexual assault in the third degree, sexual assault in the third degree with a firearm, escape in the first degree, or escape in the second degree and, in the course of and in furtherance of such crime or of flight therefrom, he, or another participant, if any, causes the death of a person other than one of the participants, except that in any prosecution under this section, in which the defendant was not the only participant in the underlying crime, it shall be an affirmative defense that the defendant: (A) Did not commit the homicidal act or in any way solicit, request, command, importune, cause or aid the commission thereof; and (B) was not armed with a deadly weapon, or any dangerous instrument; and (C) had no reasonable ground to believe that any other participant was armed with such a weapon or instrument; and (D) had no reasonable ground to believe that any other participant intended to engage in conduct likely to result in death or serious physical injury."

A subsequent examination of the restaurant revealed that a safe and cash register had been opened and money had been removed from both. Certain items were taken from the restaurant. The victim's wallet also was missing. Some of the missing items were later found in Fairfield in a dumpster. Fingerprints taken from the items recovered were identified as those of the defendant. On March 24, 1982, while the police were at the scene of the crime, the defendant called the restaurant, identified himself, and inquired about the condition of the victim. Later on the same day, he called the police station and made a similar inquiry. During this phone call, the defendant admitted that "around the time of the homicide," he had been at the restaurant.

On June 18, 1982, the Westport police were notified that the defendant had been apprehended in Toronto, Canada, where he was being held by the Toronto police. That day, two Westport police officers, Lieutenant Ronald Malone and Detective Donald Brown, flew to Toronto and were informed that the defendant was willing to speak to them. After the officers informed the defendant of his *Miranda*[3] rights, the defendant orally indicated that he understood those rights and signed a waiver form. The officers then conducted a ninety minute interrogation of the defendant. With the defendant's consent, the interrogation was tape-recorded. Two tape recorders were set up on the table in the interrogation room, in full view of the defendant. He was informed that the two tape recorders had been set up, "in case one [did not] work." During the interrogation, the defendant admitted being in the restaurant on the night of the crime with his companion Jimmy. The defendant initially insisted, however, that four masked

---

[3] See *Miranda* v. *Arizona*, 384 U.S. 436, 475, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

men had come into the restaurant to rob the victim and that it had been Jimmy who had shot the victim. After the officers indicated that they did not believe this rendition of events, the defendant changed his story. The defendant admitted that no masked men had come to the restaurant. He then confessed that he and his companion Jimmy had gone to the restaurant with the intent to rob the victim but stated that they had had no intention of killing him. The defendant indicated that both he and Jimmy had been armed. After detailing the events of the robbery, including his taking the victim's wallet, credit cards and cash, the defendant stated that it was Jimmy who had actually killed the victim.

The defendant filed a pretrial motion to suppress his confession. At the May 11, 1983 hearing on the motion, the defendant claimed that the state had failed to meet its burden of proving by a preponderance of the evidence that he had knowingly and intelligently waived his right to remain silent. At that hearing, Malone, Brown and the defendant testified. Additionally, the tape recordings made in Toronto were admitted as exhibits and played for the court. After the hearing, the trial court denied the defendant's motion to suppress. On May 12, 1983, the defendant entered a plea of nolo contendere to the charge of felony murder, reserving, under General Statutes § 54-94a,[4] the right to appeal the court's denial of his pretrial motion to suppress. The record reveals that neither the trial court nor the state objected to this procedure.

_____

[4] "[General Statutes] Sec. 54-94a. CONDITIONAL NOLO CONTENDERE PLEA. APPEAL OF DENIAL OF MOTION TO SUPPRESS OR DISMISS. When a defendant, prior to the commencement of trial, enters a plea of nolo contendere conditional on the right to take an appeal from the court's denial of the defendant's motion to suppress evidence based on an unreasonable search or seizure or motion to dismiss, the defendant after the imposition of sentence may file an appeal within the time prescribed by law. The issue to

## I

The threshold question on this appeal is whether the issue reserved for review by this court properly comes within the ambit of § 54-94a. General Statutes § 54-94a allows a defendant to enter a plea of nolo contendere conditional on the right to take an appeal from the trial court's denial of a motion to suppress evidence based on an unreasonable search and seizure or from the denial of a motion to dismiss. See, e.g., *State* v. *Telesca,* 199 Conn. 591, 508 A.2d 1367 (1986); *State* v. *Madera,* 198 Conn. 92, 503 A.2d 136 (1985); *State* v. *Delmonaco,* 194 Conn. 331, 481 A.2d 40, cert. denied, 469 U.S. 1036, 105 S. Ct. 511, 83 L. Ed. 2d 401 (1984). In this case, the defendant has reserved the question of whether his waiver of his right against self-incrimination was voluntary, knowing and intelligent. The defendant argues that his confession should have been suppressed because it was a product of misconceptions by the defendant which were induced by the conduct of the police. Such a basis for a motion to suppress, implicating the fifth and fourteenth amendments, is not included within the statutory language allowing appeals from a motion to suppress evidence obtained from an illegal search or seizure in violation of the fourth amendment. See *State* v. *Madera,* supra, 99. Moreover, the legislative history of § 54-94a does not suggest that the statute could be used to challenge a denial of a motion to suppress evidence other than that obtained contrary to fourth amendment search and seizure principles. *State* v. *Madera,* supra, 99 n.7. The question reserved by the defendant does not fall within the scope of § 54-94a.

---

be considered in such an appeal shall be limited to whether it was proper for the court to have denied the motion to suppress or the motion to dismiss. A plea of nolo contendere by a defendant under this section shall not constitute a waiver by the defendant of nonjurisdictional defects in the criminal prosecution."

Notwithstanding the failure of the defendant's plea to conform to § 54-94a, both the defendant and the state urge this court to exercise our inherent supervisory authority over the administration of justice in order to review the defendant's claim.[5] See *State* v. *Madera,* supra, 99–100; *State* v. *Cohane,* 193 Conn. 474, 499, 479 A.2d 763, cert. denied, 469 U.S. 990, 105 S. Ct. 397, 83 L. Ed. 2d 331 (1984), citing *United States* v. *Butler,* 567 F.2d 885, 893 (9th Cir. 1978). Although in *State* v. *Madera,* supra, 102, this court expressed reservations concerning the use of conditional plea procedures such as the one employed in this case, we conclude that in contrast to *Madera,* this case is an appropriate situation for this court to exercise its inherent supervisory authority over the administration of justice to review the issue preserved by the defendant. The admissibility of the defendant's confession is the sole question presented to this court and it properly can be reviewed on the record available. See id. In addition, at the time of the defendant's plea, it was the clear

---

[5] In his brief, the defendant urges that we adopt a general practice of permitting criminal defendants to appeal from alleged nonjurisdictional defects in judgments of conviction rendered against them upon pleas of nolo contendere, where the plea is made with the explicit approval of both the trial court and the prosecution. Practice Book § 4003 (b), which became effective October 1, 1986, provides: "APPEALS OF RULINGS ON MOTIONS TO DISMISS OR SUPPRESS FOLLOWING JUDGMENTS ENTERED UPON CONDITIONAL PLEAS OF NOLO CONTENDERE. . . . (b) With the approval of the court, after a hearing to consider any objections thereto, a defendant may enter a conditional plea of guilty or nolo contendere, reserving in writing the right, on appeal from the judgment, to review of the adverse determination of any motion made prior to the close of evidence, which motion must be specified in such written reservation. If the defendant prevails on appeal, the judgment shall be set aside and the defendant shall be allowed to withdraw his plea after the case has been remanded to the trial court. The court shall not accept a plea of guilty or nolo contendere pursuant to this subsection where the adverse determination of the specified motion would not have a significant impact on the disposition of the case in the trial court. The court shall also decline to accept such a nolo contendere or guilty plea where the record available for review of the ruling upon the specified motion is inadequate for appellate review of the court's determination thereof."

understanding and expectation of the defendant, the prosecutor and the trial court that the court's ruling on the defendant's motion to suppress the confession would be appealable. Moreover, to force *this* defendant to go through an entire trial to preserve the right to appeal the pretrial ruling, under the facts of this case, would be a waste of judicial time and resources. We therefore will proceed to consider the merits of the defendant's appeal.[6]

## II

The defendant claims that the trial court erred in denying his motion to suppress because his confession was made without a voluntary, knowing and intelligent waiver of his right against self-incrimination.[7] Specifically, the defendant argues that he was laboring under "three fundamental misconceptions that prompted him to speak where he otherwise would not have done so." These misconceptions were: (1) that verbal statements

---

[6] In *State* v. *Madera,* 198 Conn. 92, 101, 503 A.2d 136 (1985), we noted that "[t]he conditional plea is susceptible to abuse . . . unless its use is carefully limited to significant issues the determination of which on appeal is likely to be dispositive of the case." Practice Book § 4003 (b) requires that the reserved issue be specified in writing. Additionally, the court may not accept a conditional plea where the record available is inadequate or where an adverse determination of the specified issue would not have a significant impact on the disposition of the case in the trial court.

[7] The defendant makes his claim under both the federal and state constitutions. "We have held: 'Although the *Miranda* warnings were originally effective in state prosecutions only because they were a component of due process of law under the fourteenth amendment; *Miranda* v. *Arizona,* [384 U.S. 436, 463–65, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966)]; *Malloy* v. *Hogan,* 378 U.S. 1, 3, 84 S. Ct. 1489, 12 L. Ed. 2d 653 (1964); they have also come to have independent significance under our state constitution. Conn. Const., art. I, § 8; *State* v. *Falby,* 187 Conn. 6, 11 and n.1, 444 A.2d 213 (1982).' *State* v. *Ferrell,* 191 Conn. 37, 40–41, 463 A.2d 573 (1983). The defendant, however, 'has proferred no argument that the rights afforded to him by the federal and state constitutions are in any way distinguishable with respect to the substantive issue that he has raised. We see no reason, on the facts of this case, independently to undertake such an analysis.' *State* v. *Braxton,* 196 Conn. 685, 688 n.2, 495 A.2d 273 (1985)." *State* v. *Toste,* 198 Conn. 573, 576 n.3, 504 A.2d 1036 (1986).

were not the equivalent of formal written statements and could not be used against him in court; (2) that, "even though all [the] evidence pointed to him as the killer," if he had not shot the victim, he could avoid prosecution and punishment as a murderer; and (3) that if he did not talk to the police at the time they interviewed him in Toronto, he would not be able to give his side of the story later. The defendant maintains that the police not only were "fully aware" that the defendant was laboring under these misconceptions, but that the "officers reinforced [the defendant's misconceptions] and did everything they could to create an atmosphere in which the defendant could do nothing but offer an immediate confession." The defendant argues that his decision to speak to the officers resulted, not from an "essentially free and unconstrained choice," but from a misunderstanding of his rights as well as "compelling pressures exerted upon him which 'undermine[d] . . . [his] . . . will to resist and compel[led] him to speak where he would not otherwise [have] do[ne] so freely.' *State* v. *Perry,* [195 Conn. 505, 519–20, 488 A.2d 1256 (1985), quoting *State* v. *Cydzik,* 60 Wis. 2d 683, 692, 211 N.W.2d 421 (1973)]."

The state argues that only the first "misconception," which related to the defendant's waiver of his right to remain silent, was raised at the suppression hearing. The state maintains that the defendant's argument as it relates to the second and third "misconceptions," which concern the voluntariness of the confession itself, essentially alleging that the defendant's confession was coerced by the conduct of the police, is not reviewable because no claim of coercion was raised at the suppression hearing. In making this claim, the state points out that at the suppression hearing, counsel for the defense expressly characterized the issue as "whether or not the defendant knowingly and intelligently waived [his *Miranda*] rights." In his argument to the court, defense

counsel contended that the defendant had not knowingly and intelligently waived his rights because he "simply did not appreciate the fact that talking is equivalent to giving a [written] statement." At no time did counsel ask the court to consider a claim that the confession itself was not voluntary, nor did counsel present evidence that the confession was a product of police coercion. The state therefore argues that the defendant's failure to raise a voluntariness claim which could have been raised at the suppression hearing precludes review in this court.

While we generally do not review claims of error which have not first been presented to and ruled upon by the trial court, we will review unpreserved claims of error when the record adequately supports a claim that the defendant has been deprived of a fundamental constitutional right and a fair trial. *State* v. *Smith,* 200 Conn. 465, 475, 512 A.2d 189 (1986); *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973). "It is well settled that the use of an involuntary confession at trial constitutes a denial of due process. *Brown* v. *Allen,* 344 U.S. 443, 475, 73 S. Ct. 397, 97 L. Ed. 469 (1953)." *State* v. *Smith,* supra, 475–76. While the review of the voluntariness issue implicates a due process analysis, voluntariness is also relevant to the claimed waiver of the defendant's fifth amendment privilege against self-incrimination. See, e.g., *State* v. *Toste,* 198 Conn. 573, 579–80, 504 A.2d 1036 (1986). In addition, our examination of the record in this case demonstrates that the trial judge was aware of the voluntariness component involved. See *State* v. *Shifflett,* 199 Conn. 718, 729, 508 A.2d 748 (1986). In making its ruling, the trial court said, inter alia: "So that [the defendant] knew fully what he was doing. That he voluntarily, intelligently and knowingly waived *any* rights that he might have." (Emphasis added.) We therefore will review the entire scope of the defendant's claim.

We first address the defendant's claim that the state failed to prove that the waiver of his right to remain silent was voluntary, knowing and intelligent. In making this claim, the defendant does not argue that the police failed to give the required *Miranda* warnings or that the warnings given were deficient. Instead, the defendant argues that the police knew that the defendant was laboring under certain misconceptions, that the police reinforced these misconceptions, and that as a result, the waiver of his right to remain silent was not voluntary, knowing and intelligent.

" 'In order to show that the defendant waived his privilege against self-incrimination, the state must prove by a preponderance of the evidence that he knowingly and intelligently waived his constitutional right to remain silent. *State* v. *Alfonso,* 195 Conn. 624, 628, 490 A.2d 75 (1985); *State* v. *Perry,* 195 Conn. 505, 516 n.8, 488 A.2d 1256 (1985).' *State* v. *Aversa,* 197 Conn. 685, 695, 501 A.2d 370 (1985); see *Miranda* v. *Arizona,* [384 U.S. 436, 475, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966)]. 'The question is not one of form, but rather whether the defendant in fact knowingly and voluntarily waived the rights delineated in the *Miranda* case.' *North Carolina* v. *Butler,* 441 U.S. 369, 373, 99 S. Ct. 1755, 60 L. Ed. 2d 286 (1979); *State* v. *Frazier,* 185 Conn. 211, 226, 440 A.2d 916 (1981), cert. denied, 458 U.S. 1112, 102 S. Ct. 3496, 73 L. Ed. 2d 1375 (1982). '[T]he question of waiver must be determined on "the particular facts or circumstances surrounding [the] case, including the background, experience, and conduct of the accused." *Johnson* v. *Zerbst,* 304 U.S. 458, 464 [58 S. Ct. 1019, 82 L. Ed. 1461 (1938)].' *North Carolina* v. *Butler,* supra, 374–75. The issue of waiver is factual, 'but our usual deference to the finding of the trial court on questions of this nature is qualified by the necessity for a scrupulous examination of the record to ascertain whether such a finding is supported

by substantial evidence. *Culombe* v. *Connecticut,* 367 U.S. 568, 605, 81 S. Ct. 1860, 6 L. Ed. 2d 1037 (1961).' *State* v. *Frazier,* supra, 219." *State* v. *Toste,* supra, 579–80; see also *State* v. *Gray,* 200 Conn. 523, 532–33, 512 A.2d 217 (1986).

The defendant's assertion that he misunderstood his constitutional rights in that he believed that there was a difference between a written and an oral statement, standing alone, is not enough to vitiate the court's finding that the defendant knowingly and intelligently waived his rights. *State* v. *Frazier,* supra, 225. Whether a defendant's waiver was knowing and intelligent depends in part "on his ability to understand and act upon his constitutional rights." *State* v. *Toste,* supra. In *Toste,* we recently explained factors which the court may consider in determining whether an individual had the capacity to understand the warnings. These factors include: "[T]he defendant's experience with the police and familiarity with the warnings; *Fare* v. *Michael C.,* [442 U.S. 707, 725, 99 S. Ct. 2560, 61 L. Ed. 2d 197, reh. denied, 444 U.S. 887, 100 S. Ct. 186, 62 L. Ed. 2d 121 (1979)]; *State* v. *Alfonso,* [195 Conn. 624, 630–31, 470 A.2d 75 (1985)]; *People* v. *Medina,* 71 Ill. 2d 254, 259, 375 N.E.2d 78 (1978); his level of intelligence, including his IQ; *Cooper* v. *Griffin,* 455 F.2d 1142, 1145 (5th Cir. 1972); *State* v. *Benoit,* 440 So. 2d 129, 131 (La. 1983); *Matter of Welfare of S.W.T.,* 277 N.W.2d 507, 512–13 (Minn. 1979); his age; *Fare* v. *Michael C.,* supra; *Matter of D.A.S.,* 391 A.2d 255, 258 (D.C. App. 1978); his level of education; *Davis* v. *North Carolina,* 384 U.S. 737, 742, 86 S. Ct. 1761, 16 L. Ed. 2d 895 (1966); *State* v. *Harris,* 188 Conn. 574, 581, 452 A.2d 634, cert. denied, 460 U.S. 1089, 103 S. Ct. 1785, 76 L. Ed. 2d 354 (1982); his vocabulary and ability to read and write in the language in which the warnings were given; see *State* v. *Alfonso,* supra; *State* v. *Frazier,* supra, 226; intoxication; see *State* v. *Stankowski,* 184

Conn. 121, 134–35, 439 A.2d 918, cert. denied, 454 U.S. 1052, 102 S. Ct. 596, 70 L. Ed. 2d 588 (1981); his emotional state; *State* v. *Harris,* supra, 582; and the existence of any mental disease, disorder or retardation. *Henry* v. *Dees,* 658 F.2d 406, 411 (5th Cir. 1981); *People* v. *Watson,* 75 Cal. App. 3d 384, 397, 142 Cal. Rptr. 134 (1977)." *State* v. *Toste,* supra, 580–81; see generally 1 W. LaFave & J. Israel, Criminal Procedure (1984) § 6.9 (b). The defendant argues that other factors must be considered; we will refer to these factors when appropriate to do so. The question of the credibility of witnesses is, of course, for the trial court to determine. *State* v. *Perry,* supra; *State* v. *Hawthorne,* 176 Conn. 367, 371, 407 A.2d 1001 (1978).

After reviewing the record in this case, we find that the state has met its burden of showing that the defendant's waiver was knowing and intelligent. At the time of the confession, the defendant was twenty-eight years old. Although he had been born in China, he had lived in the United States for the previous eighteen years. He was able to read English and had passed a high school equivalency exam. The defendant did not appear to be under the influence of alcohol or drugs at the time of his questioning. See *State* v. *Toste,* supra, 581; *State* v. *Stankowski,* supra. The defendant previously had been arrested "three or four" times; he did not argue that he lacked familiarity with the criminal procedures undertaken. The defendant testified at the suppression hearing that he had previously been arrested in Utah, Massachusetts and New Jersey. *State* v. *Alfonso,* supra. Moreover, the defendant was read his rights and when asked if he understood his rights, he said that he did. In fact, Malone read the defendant his rights paragraph by paragraph; the defendant indicated that he understood each and every one. After he, too, read the waiver of rights form, he signed it. A defendant's express written and oral waiver is "strong proof" that

the waiver is valid. *North Carolina* v. *Butler,* supra; *State* v. *Derrico,* 181 Conn. 151, 164, 434 A.2d 356, cert. denied, 449 U.S. 1064, 101 S. Ct. 789, 66 L. Ed. 2d 607 (1980).

The defendant asserts that he did not understand that verbal as well as written statements could be used against him and that the police reinforced this misconception by telling the defendant that he could "just talk" or "make a statement." The defendant recognizes that, absent police inducement of this misconception, his subjective belief as to the difference between verbal and written statements was insufficient by itself to vitiate the waiver of his rights. See *State* v. *Frazier,* supra, 226. Nevertheless, he argues that under the totality of circumstances, the state has failed to prove that the defendant knowingly and voluntarily waived his rights. Our review of the record, however, reveals that substantial evidence supports the finding that the defendant understood his rights and voluntarily waived them. See *State* v. *Toste,* supra, 581–83.

There is no merit to the defendant's claim that he did not understand that verbal as well as written statements could be used against him and that the officers reinforced this misconception. The officers' conduct was not calculated to induce or foster the defendant's misconception. Contrary to the defendant's argument, the record simply does not support the defendant's allegation that the officers led the defendant to believe that the waiver form merely represented what his appellate brief calls a "bureaucratic prerequisite to conversation" and that nothing he said would be used against him unless he signed a formal statement. We point out that the record of the interrogation does indicate the defendant's concern about signing a written statement that implicated his accomplice, Jimmy, whom the defendant apparently feared. "It is, we think, a common experience of life that in many circumstances persons are

willing to convey information orally but are reluctant to put the same thing in writing." *United States* v. *Cooper,* 499 F.2d 1060, 1062 (D.C. Cir. 1974); *United States* v. *Weisz,* 718 F.2d 413, 430 (D.C. Cir. 1983), cert. denied, 465 U.S. 1027, 104 S. Ct. 1285, 79 L. Ed. 2d 688 (1984); *State* v. *Frazier,* supra. " '[A] refusal to sign a waiver [does not mean] that the person interrogated is assuming a contradictory position with respect to his *willingness* to respond to oral questions, whatever may be his motive in so doing.' " (Emphasis added.) *United States* v. *Foskey,* 636 F.2d 517, 522 (D.C. Cir. 1980). The trial court not only heard the tape recordings and their tonal quality but heard and observed the defendant and the police officers. The record justifies the court's conclusions including that the defendant "knew fully what he was doing."

During the interrogation and after the defendant had related the inculpatory version of the felony homicide, he specifically admitted that he had not been "threatened or promised . . . anything" by the police. Significantly, this component of voluntariness, which implicates not only his waiver of his *Miranda* rights but also the voluntariness of the confession itself, was repeated by him months later when he testified at the suppression hearing. At that time, he said that neither Malone nor Brown had made any promises to or threats against him. Additionally, the defendant testified that he "voluntarily wanted to talk to [Malone and Brown]." Given his own admission that the police did not promise or threaten him and his admission that he understood his *Miranda* rights, including the fact that "anything I say can be used against me in a court of law," and his failure even remotely to suggest that he misunderstood the rights of which he was carefully informed by the police, there is no error in the trial court's finding that the defendant's waiver was voluntary, knowing and intelligent.

We also address the defendant's related position that the confession itself was not voluntary. In making this claim, the defendant argues that the police fostered and reinforced *his* misconceptions that if he had not shot the victim, he could avoid prosecution as a murderer and that if he did not talk to the police at the time they interviewed him in Toronto and "offer exculpatory evidence on his own behalf," he would "never be able to do so again." The defendant maintains that these actions of the police officers, coupled with his misunderstanding concerning the use of oral statements, created an atmosphere of coercion in which the defendant could do nothing but offer an immediate confession. He argues that his decision to speak resulted not from an "essentially free and unconstrained choice," but rather from "compelling pressures exerted upon him which 'undermine[d] . . . [his] . . . will to resist and compel[led] him to speak where he would not otherwise [have] do[ne] so freely.' " We do not agree.

"The state has the burden of proving the voluntariness of a confession by a preponderance of the evidence. *Lego* v. *Twomey,* 404 U.S. 477, 489, 92 S. Ct. 619, 30 L. Ed. 2d 618 (1972); *State* v. *DeForge,* 194 Conn. 392, 397, 480 A.2d 547 (1984); *State* v. *Stankowski,* 184 Conn. 121, 131, 439 A.2d 918, cert. denied, 454 U.S. 1052, 102 S. Ct. 596, 70 L. Ed. 2d 588 (1981). In order to be voluntary a confession must be the product of an essentially free and unconstrained choice by the maker. *State* v. *Stankowski,* supra, 132; *State* v. *Staples,* 175 Conn. 398, 408, 399 A.2d 1269 (1978). 'If it is not, if his will has been overborne and his capacity for self-determination critically impaired, the use of the confession offends due process.' *Culombe* v. *Connecticut,* 367 U.S. 568, 602, 81 S. Ct. 1860, 6 L. Ed. 2d 1037 (1961)." *State* v. *Smith,* 200 Conn. 465, 477, 512 A.2d 189 (1986). The determination of whether a confession is voluntary must be based on a consideration of the

totality of circumstances surrounding it. Id.; *State* v. *DeForge,* supra, 397; *State* v. *Carter,* 189 Conn. 611, 622, 458 A.2d 369 (1983); *State* v. *Turcio,* 178 Conn. 116, 144, 422 A.2d 749 (1979), cert. denied, 444 U.S. 1013, 100 S. Ct. 661, 62 L. Ed. 2d 642 (1980); see *Schneckloth* v. *Bustamonte,* 412 U.S. 218, 248–49, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973). Whether a confession is voluntary and admissible is, in the first instance, a question of fact to be decided by the trial court in the exercise of its legal discretion. *State* v. *Smith,* supra, 477–78; *State* v. *Derrico,* supra, 162. "That discretion must, however, be exercised by the trial court in accordance with constitutional standards of due process. *State* v. *Staples,* supra, 408. Though the question is ultimately factual, our usual deference to factfinding by the trial court is qualified on the question of voluntariness by the necessity for an independent and scrupulous examination of the entire record to ascertain whether the trial court's finding is supported by substantial evidence. *State* v. *Toste,* [supra, 576]; *State* v. *DeForge,* supra, 398." *State* v. *Smith,* supra, 478.

During the defendant's interrogation, which lasted about ninety minutes, the defendant first told a version of the robbery which stated that four men came into the victim's restaurant and killed the victim. The police told the defendant they did not believe that story and urged him to tell the truth. Malone pointed out that the defendant's story was a little different from the one that the defendant had told him on March 24, 1982, when the defendant telephoned the victim's restaurant during the police investigation. Malone, expressing disbelief of the initial version given by the defendant, said: "I'm just telling you, that you have a chance now; it may be your first chance and your last chance to straighten it out." Commenting that the truth "will have to go before the Court, if I [Malone] get it now,"

Malone then said: "If you don't get it out now I don't know that you'll have the opportunity to do it again." In addition, and also before he gave his subsequent inculpatory version, the defendant told the police that he "[did not] see how you can get a murder case up here." Malone then said: "Okay. Because you're there and a crime happens, that's all it takes for murder in Connecticut."

These circumstances must be considered in context, especially the defendant's statement in Toronto and months later on the witness stand, that the officers never made any threats or promises. Such subjective declarations are a telling measure of his mental state at the critical time of his confession. Encouraging a criminal suspect to tell the truth, when no promises or threats have been made, does not alone make a confession involuntary. See, e.g., *State* v. *Perry,* 195 Conn. 505, 519, 488 A.2d 1256 (1985); *Harvey* v. *State,* 272 Ark. 19, 22–23, 611 S.W.2d 762 (1981); *State* v. *Tillery,* 227 Kan. 342, 344–45, 606 P.2d 1031 (1980); *State* v. *Theriault,* 425 A.2d 986, 990 (Me. 1981); *Young* v. *State,* 670 P.2d 591, 595 (Okla. Crim. App. 1983). Similarly, police suggestions that a criminal suspect should cooperate do not, alone, render a confession involuntary. See, e.g., *United States* v. *Ballard,* 586 F.2d 1060, 1063 (5th Cir. 1978); *Perry* v. *State,* 176 Ind. App. 120, 121–22, 374 N.E.2d 558 (1978). In *United States* v. *Ballard,* the Fifth Circuit Court of Appeals approved the practice of pointing out that such cooperation will be made known to the court. See also *State* v. *Perry,* supra. Of course, exhortations should not be cast in terms of express or implied promises that the law enforcement authorities will seek to obtain for the defendant a more favorable court disposition than if he had not cooperated. See *State* v. *Theriault,* supra. We note that when the defendant was sentenced, the trial court imposed a sentence of thirty years imprison-

ment and said that if it "felt that Mr. Chung was the one who committed the actual murder . . . the sentence would be far more than thirty years. It would be sixty years." Under all the circumstances, we cannot find the inculpatory statements of the defendant to be constitutionally proscribed when no promises had been made and no threats directed to him. There were no improper inducements to confess employed by the police.

The defendant himself testified that his confession was *not* induced by threats or promises, thus indicating that he did not perceive the police conduct as coercive. "Without a causal relationship between the alleged [inducements] and the incriminating statement[s], there is no basis for excluding the statement[s]." *State* v. *Perry,* supra. We simply "cannot supply evidence that is lacking." *State* v. *Toste,* supra, 585 n.5; *State* v. *Aversa,* 197 Conn. 685, 697, 501 A.2d 370 (1985). Moreover, "[t]he [United States] Constitution does not prohibit every element which influences a criminal suspect to make incriminating admissions. . . . The constitutional guarantee is only that the witness not be *compelled* to give self-incriminating testimony. The test is whether, considering the totality of the circumstances, the free will of the witness is overborne. *Rogers* v. *Richmond,* 365 U.S. 534, 544, [81 S. Ct. 735, 5 L. Ed. 2d 760] (1961)." (Citations omitted; emphasis in original.) *United States* v. *Washington,* 431 U.S. 181, 187–88, 97 S. Ct. 1814, 52 L. Ed. 2d 238 (1977). The defendant's confession was not "involuntary, i.e., the product of coercion, either physical or psychological . . . ." *Rogers* v. *Richmond,* supra, 540. Its validity was not undermined so that we can fairly say that the conduct of the police, including their urging the disclosure of the truth which suggested that there might not be another opportunity to do so short of going before the court, "over[bore the defendant's] will to resist

and [brought] about [a confession that was] not freely self-determined . . . ." *Rogers* v. *Richmond,* supra, 544; *State* v. *DeForge,* supra, 397–98. The defendant's confession was the product of an essentially free and unconstrained choice. See *State* v. *Smith,* supra; *State* v. *Staples,* supra, 408.

On the basis of the record before us, we conclude, therefore, that there was ample evidence to meet the necessary standard of proof of voluntariness.

The trial court did not err in denying the defendant's motion to suppress.

There is no error.

In this opinion the other justices concurred.