STATE OF CONNECTICUT *v.* ROBERT HOUSEHOLDER
(2499)

HULL, SPALLONE and DALY, Js.

Argued January 16—decision released April 15, 1986

1

*Karen Torre,* certified legal intern, with whom was *Timothy H. Everett,* for the appellant (defendant).

*Susan E. Gill,* deputy assistant state's attorney, with whom, on the brief, was *Eugene J. Callahan,* state's attorney, *Bruce Hudok,* assistant state's attorney, and *Bernadette Conway,* legal intern, for the appellee (state).

SPALLONE, J. The defendant is appealing from the judgment rendered after his conviction by a jury of the charges of attempted robbery in the first degree, in violation of General Statutes §§ 53a-49 and 53a-134 (a) (2); burglary in the third degree, in violation of General Statutes § 53a-103 (a); and larceny in the fourth degree, in violation of General Statutes §§ 53a-119 and 53a-125 (a).

The defendant claims that the trial court erred (1) in its instruction to the jury on the law of criminal attempt, renunciation of an attempt and robbery and its lesser included offenses, (2) in its denial of the jury's request for copies of the statutory charge on attempted robbery, its failure to reinstruct the jury, its failure to determine the jury's legal needs and its failure to invite the jury to make additional requests on the law, and (3) in its denial of the defendant's motion to suppress his confession on the grounds that it was involuntary.

The evidence adduced at the trial could reasonably support the following facts. On Sunday, July 18, 1982, at about 3 p.m., the victim, Alan Parsell, who was eighty years old, was napping in a chair in the backyard of his home in Westport. A short time later, he was awakened by a man's voice yelling, "drop your wallet, drop your wallet." Parsell saw the defendant, who was pointing a gun at him, standing at the corner of Parsell's house and leaning against a rain spout. Parsell started to move away from the defendant, hoping to

be able to reach the house and call the police. The defendant, at this point, yelled to Parsell, "[d]rop your wallet or we'll cut your daughter's throat." The defendant then turned and ran down Parsell's driveway. Parsell entered the house and immediately called the Westport police, who arrived in about ten minutes. Parsell, in his description to the police, stated that the man had a large black mustache, dark hair and was wearing a yellow tee shirt and dark pants.

An examination of the Parsell residence revealed that an intruder had entered through an unlocked door, rummaged through several drawers on both the first and second floors and pried open a locked drawer in a dining room buffet. Several watches, some coins and a .22 caliber revolver, which was kept in the buffet drawer, were missing. A chain saw had been removed from a closet but was found in the driveway.

At approximately this same time, Officer Fred Pope, who had just heard a police broadcast describing the man who had pointed a gun at Parsell, was driving home from work in his own vehicle. As he drove along Post Road, near a shopping center, which was separated from Parsell's residence by approximately one-half mile of heavily shrubbed swamp area, he saw a man who fit the suspect's description. The man was wearing a yellow tee shirt and was carrying a brown paper bag. He noticed that particles of grass were stuck to the man's pants and sneakers. After Pope turned his vehicle around in order to get a better look at the man, he observed him standing outside a store but noted that he no longer was carrying the paper bag. Pope, who was not in uniform, pulled alongside to talk to the man, later identified as the defendant, who asked him for a ride to Bridgeport. Pope then summoned Officer George Baron, who was nearby, and both confronted the defendant. Baron told the defendant that he was

investigating a robbery that had just occurred and that the defendant, who had identified himself as Robert Householder, fit the suspect's description. The defendant agreed to accompany the officers back to the Parsell residence. When they arrived, Parsell stated that the defendant "appear[ed] to be the man" although he indicated that he did not want to accuse anyone unjustly. At this point, the defendant was placed under arrest.

Subsequently, the defendant gave a statement to the police implicating himself and Walter Day in the offense. Day, who had suggested the crime, had previously worked for Parsell. He admitted that he had dropped the defendant off at the Parsell residence and was to have come back within a few minutes to pick up the defendant. The defendant also led the police to the brown paper bag he had discarded near the shopping center where he was first picked up by the police. The bag contained a .22 caliber gun as well as the other items taken from the Parsell residence.

The first two claims of error raised by the defendant concern the court's charge to the jury and the court's actions in dealing with the jury after its instructions were completed. The defendant did not except to the charge as given, nor did he except to the manner in which the court responded to a request made by the jury for written copies of the charge on attempted first degree robbery and its lesser included offenses. A defendant in a criminal case is not permitted " 'to fail, whether from a mistake of law, inattention or design, to object to matters occurring during a trial until it is too late for them to be corrected or even considered and then, if the outcome proves unsatisfactory, to raise them for the first time on appeal.' " *State* v. *Kurvin,* 186 Conn. 555, 564, 442 A.2d 1327 (1982), quoting *State* v. *Taylor,* 153 Conn. 72, 86–87, 214 A.2d 362 (1965).

We are not persuaded that the record in this case established either that the defendant was deprived of a constitutional right that arose subsequent to his trial, or that he was deprived of a fundamental constitutional right and a fair trial, as would be required to bring this case within the ambit of *State* v. *Evans*, 165 Conn. 61, 70, 327 A.2d 576 (1973), which delineates and expounds upon the conditions which must be present in order for a court's ruling, not excepted to at the trial, to qualify for and be subject to appellate review. Consequently, we will not consider the defendant's first two claims of error.

The defendant next claims that the court erred in finding that a statement given to the police by the defendant was voluntary and admissible. The record discloses that, at a hearing on the motion to suppress the statement, evidence was offered as follows. The defendant was arrested immediately following his confrontation with the victim. At that time, he was informed that he was being arrested for burglary and larceny and was advised of his rights in accordance with the mandates of *Miranda* v. *Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). The defendant did not request an attorney nor did he express an inclination to remain silent. He did not appear to be under the influence of drugs or alcohol. Later that evening, at approximately 7 p.m. or 7:30 p.m., at the police station, the defendant was again advised of his rights by a different officer. Present in the room at the time along with the defendant were Detective Donald Brown, Lieutenant William Chiarenzelli, and the defendant's accomplice Walter Day. Brown had just completed an interview with Day, who had agreed to give a statement to the police. Before doing so, however, he insisted on speaking to the defendant to explain to him his motivation for giving the statement.

Both Brown and Chiarenzelli were reluctant to arrange the requested meeting but finally agreed to it. It was before this meeting that the defendant was given his second set of *Miranda* warnings and he also initialed each provision contained therein after an explanation of the waiver of rights form was provided to him by the police. At this point, Day told the defendant that he was going to give the police a statement because he did not want to get involved in an offense in which a gun was used. The defendant at this stage denied that a gun was used. Day responded and said that the police told him a gun was involved and he reiterated his intention to give the police a statement. The defendant then asked, "[w]ell, what should I do?" Day replied, "[y]ou do what you got to do, I know what I've got to do because I'm not involved with a gun." Day was advised that he would be released on a promise to appear in court and he was removed from the room. The police resumed their interview with the defendant during the course of which Brown expressed concern that the gun be recovered, so that it would not be found by a child, inasmuch as a school was located in the area where the defendant had been found. The defendant stated that he had a child of his own and did not want to see a child get hurt. He agreed to show the officers where the gun was and asked if there was "anything in it" for him. The officers told the defendant that they were not making any promises or deals and specifically informed the defendant that he would not be released on a promise to appear. It was at this point that the defendant led the officers to where he had hidden the paper bag which still contained the gun and other items stolen from the victim's residence. Upon their return to police headquarters, Brown again advised the defendant of his rights, again explained each provision on the waiver form that the defendant had previously signed and inquired whether the defend-

ant wished to invoke any rights. When asked if he still wished to give a statement, the defendant responded, "[w]hat the heck" and then dictated a statement admitting and describing his participation in the crime.

On the basis of this evidence, the court found that the defendant's statement was given voluntarily after a full advisement of his rights and was not induced by promises, threats or coercion as claimed by the defendant. The court, therefore, denied the defendant's motion to suppress and the defendant excepted.

A statement made by a defendant during the course of a custodial interrogation is admissible upon proof that he knowingly, intelligently and voluntarily waived his rights to remain silent and to the presence of an attorney. See *State* v. *Derrico,* 181 Conn. 151, 168, 434 A.2d 356, cert. denied, 449 U.S. 1064, 101 S. Ct. 789, 66 L. Ed. 2d 607 (1980). "In order to prove that the defendant has effectively waived his privilege against self-incrimination, the state must prove, by a preponderance of the evidence; *Lego* v. *Twomey,* 404 U.S. 477, 489, 92 S. Ct. 619, 30 L. Ed. 2d 618 (1972); *State* v. *Wilson,* 183 Conn. 280, 286–87, 439 A.2d 330 (1981); *State* v. *Derrico,* [supra, 162]; that the defendant knowingly and intelligently waived his constitutional right to remain silent. *North Carolina* v. *Butler,* 441 U.S. 369, 373, 99 S. Ct. 1755, 60 L. Ed. 2d 286 (1979); *Johnson* v. *Zerbst,* 304 U.S. 458, 464, 58 S. Ct. 1019, 82 L. Ed. 1461 (1938)." *State* v. *Harris,* 188 Conn. 574, 579, 452 A.2d 634 (1982), cert. denied, 460 U.S. 1089, 103 S. Ct. 1785, 76 L. Ed. 2d 354 (1983); *State* v. *Aversa,* 197 Conn. 685, 695, 501 A.2d 370 (1985); *State* v. *Cardona,* 6 Conn. App. 124, 136, 504 A.2d 1061 (1986). "An express written or oral statement of waiver of the right to remain silent or of the right to counsel is usually strong proof of the validity of that waiver, but it is not inevitably either necessary or sufficient

to establish waiver. The question is not one of form, but rather whether the defendant in fact knowingly and voluntarily waived the rights delineated in the *Miranda* case." *North Carolina* v. *Butler,* supra, 373.

The question of whether a valid waiver occurred is a factual determination, dependent on the " 'particular facts and circumstances surrounding [the] case, including the background, experience and conduct of the accused. *Johnson* v. *Zerbst,* 304 U.S. 458, 464.' " *North Carolina* v. *Butler,* supra, 374–75; *State* v. *Jones,* 193 Conn. 70, 84, 475 A.2d 1087 (1984); *State* v. *Cardona,* supra. On review, the trial court's factual determination is subject to a "scrupulous examination of the record to ascertain whether such a factual finding [of voluntariness] is supported by substantial evidence." *State* v. *Harris,* supra, 580.

The trial court rejected the defendant's challenge that his confession was involuntary due to coercive police tactics. The court clearly credited the officer's testimony when it explicitly found that the confession was not secured by threats or promises and that no coercion was involved. Appellate review of this finding must leave the determination of credibility to the trial court and focus only on whether the record contains substantial evidence to support it. *State* v. *DeForge,* 194 Conn. 392, 398, 480 A.2d 547 (1984). We agree with the state that it does.

The defendant based his allegation of coercion on four grounds: (1) the police arranged showup between the victim and the defendant at the victim's residence immediately after the incident; (2) the confrontation between the defendant and the co-accused arranged by the police; (3) the erroneous legal advice given the defendant by the police; and (4) the interrogatory tactics by the police challenge unfairly the defendant's dignity.

We reject the defendant's contention that, by subjecting him to a confrontation with the victim, the police coerced the defendant into confessing. "It is not psychological coercion . . . to reveal incriminating evidence against a defendant." *People* v. *Gorham,* 66 Ill. App. 3d 320, 324, 384 N.E.2d 6 (1978).

We reach the same conclusion with regard to the defendant's contention that he was coerced into confessing because the officers arranged a meeting with the defendant and Day in order to "extract incriminating information from the defendant." There is evidence to show that Day precipitated the meeting to which the officers reluctantly agreed. The officers neither suggested, promoted nor participated in the meeting. The discussions were between the defendant and Day and were not led or scripted by the police. The evidence indicates, and supports the trial court's conclusion, that what transpired between Day and the defendant did not result in a coerced confession.

The defendant's challenge to the confession based on his assertion that, both as to promises regarding the bond and the charges against him, the police gave him erroneous legal advice, is similarly without merit. The record fully discloses that no inducements were made by the police to the defendant in exchange for his confession. Testimony established that no promises were made to the defendant in exchange for his disclosure as to where he had hidden the gun. Chiarenzelli responded to the defendant's inquiry into this by stating: "There is nothing in it for you." The police initially charged the defendant only with charges of burglary and larceny because, as they testified, they felt the use of the firearm was included in the burglary charge. But they informed the defendant that they were required to include the gun in their report. At no time did they promise the defendant that they would limit the charges

against him in return for his cooperation. See *State* v. *Falby,* 187 Conn. 6, 18, 444 A.2d 213 (1982).

Further, the officer told the defendant that he would not be released on a promise to appear. Although the defendant was told that Brown's father was a bail commissioner, this fact alone does not establish coercion per se. Brown also told the defendant that he did not set the bond and could not promise the defendant anything for his cooperation. Brown's statement to the defendant that "the best I can do is tell him [the bail commissioner] that you cooperated with us," is not inherently coercive. A statement by the police encouraging a defendant to tell the truth does not, as a matter of law, overcome a confessor's will. *State* v. *Falby,* supra. Nor is a statement that the accused's cooperation will be made known to the authorities sufficient grounds to render a subsequent statement involuntary. *United States* v. *Ballard,* 586 F.2d 1060, 1063 (5th Cir. 1978); *State* v. *Perry,* 195 Conn. 505, 519, 488 A.2d 1256 (1985).

We flatly reject the defendant's final contention that the police, in appealing to his sense of decency, by expressing their fears for the safety of school children known to be in the vicinity of where the defendant was last seen and where he might have secreted the gun, somehow unfairly challenged his dignity and that this resulted in a coerced confession. The court, having found a valid waiver of the defendant's *Miranda* rights, which conclusion was fully supported by the evidence, has much broader discretion in its consideration of the tactics used by the police in interrogating suspects. Had the defendant asserted his right to remain silent or had he insisted on his right to counsel being present, the parameters of the court's discretion would have been sharply narrowed. Here, the police were not conducting an interrogation against the admonishment of

*Miranda.* The circumstances in this case show that the defendant, not at the insistence of the police but apparently for reasons he felt were in his own best interest, decided to cooperate. See generally *Rhode Island* v. *Innis,* 446 U.S. 291, 100 S. Ct. 1682, 64 L. Ed. 2d 297 (1980).

We hold that, under the circumstances in this case, the trial court's conclusions that the defendant knowingly, intelligently and voluntarily waived his *Miranda* rights and that the defendant's confession was voluntary are fully supported by the evidence and are in accordance with the law.

There is no error.

In this opinion the other judges concurred.