## STATE OF CONNECTICUT *v.* RODNEY ROLLINS
## (6858)
## (6859)

STOUGHTON, NORCOTT and FOTI, Js.

Argued June 21—decision released September 19, 1989

*Suzanne Zitser,* assistant public defender, with whom, on the brief, was *G. Douglas Nash,* public defender, for the appellant (defendant).

*Frederick W. Fawcett,* assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's attorney, and *Gary W. Nicholson,* assistant state's attorney, for the appellee (state).

NORCOTT, J. This is an appeal from the judgments of conviction in two cases that were consolidated for trial. In the case designated appeal No. 6859, the defendant was charged by information with the following crimes arising out of an incident involving the victim, Darryl Garrett, in Bridgeport: attempted murder in violation of General Statutes §§ 53a-49 and 53a-54a (a); attempted assault in the first degree in violation of General Statutes §§ 53a-49 and 53a-59 (a) (1); assault in the second degree in violation of General Statutes § 53a-60 (a) (2); and robbery in the first degree in violation of General Statutes § 53a-134 (a) (2). By separate information, in what is now appeal No. 6858, the defendant was charged with the crimes of attempted murder in violation of General Statutes §§ 53a-49 and 53a-54a (a), attempted assault in the first degree in violation of General Statutes §§ 53a-49 and 53a-59 (a) (1), assault in the second degree in violation of General Statutes § 53a-60 (a) (2), and attempted robbery in the first degree in violation of General Statutes §§ 53a-49 and 53a-134 (a) (2) for a separate incident involving another victim, Fonzie Davis, in a different section of Bridgeport on another day.

After a jury trial, the defendant was convicted of the crimes of assault in the second degree and robbery in the first degree in appeal No. 6859, and was sentenced to twelve years, execution suspended after nine years, with five years probation for the robbery conviction and three years concurrent for the assault conviction. In appeal No. 6858, the jury convicted the defendant of attempted assault in the first degree and assault in the second degree. The court sentenced the defendant to twelve years, execution suspended after nine years, with five years probation for the attempted assault and five years concurrent for the assault, the sentences in 6858 to run consecutively to the terms imposed in 6859. The total effective sentence was twenty-four years, suspended after eighteen years, and five years probation.

## APPEAL NO. 6859

At trial, the jury could have reasonably found from the evidence in this case that, at approximately 12 a.m. on October 6, 1986, the defendant, Alan Fraser and Darryl Garrett became involved in an incident on a Bridgeport street that resulted in Garrett's being robbed of $400 at gunpoint. In the course of the robbery, Garrett attempted to flee, he heard several shots fired behind him and was struck just below his right kneecap by one of the bullets. Edward Stark, Garrett's treating physician, testified that the wound was not life threatening and involved no permanent damage.

The defendant claims that the trial court erred (1) in failing to instruct the jury on the essential element of operability of a gun under General Statutes § 53a-134 (a) (2), (2) in instructing the jury on an uncharged statutory alternative aggravating factor of robbery in the first degree, General Statutes § 53a-134 (a) (1), for which there was no supporting evidence, (3) in failing to instruct the jurors that they must be unanimous in their determination of which theory

of liability the defendant's conduct fell under in determining his guilt of robbery in the first degree, (4) in instructing on the statutory alternative of robbery set forth in General Statutes § 53a-133 (2) for which there was no supporting evidence, (5) in instructing the jury on two statutory alternatives for the underlying crime of larceny for which there was no supporting evidence, and (6) in admitting the defendant's postarrest statement made during custodial interrogation in violation of his *Miranda* rights.[1] Because we find error in the defendant's last claim that requires a new trial in each case, we do not reach his other claims of error.

The defendant claims error in the admission of his postarrest statements to a Bridgeport police officer. The facts relevant to this claim are the following. On December 15, 1986, Officer Michael J. Whitaker of the Bridgeport police department stopped a vehicle that had run a red light. The defendant was a passenger in that vehicle. A second police officer, Ronald Henderson, arrived on the scene very soon after the initial stop and identified the defendant, who had gotten out of the vehicle along with the other occupants, as the person wanted for attempted murder described on a poster he had in his car. Whitaker then noticed a bulge under the defendant's shirt that turned out to be a nine millimeter handgun.

Thereafter, the defendant was arrested and taken to the Bridgeport police headquarters where he was given his *Miranda* warnings. At trial, Whitaker testified that a short time later he went to the holding cell to thank the defendant for not shooting him before he had discovered the gun. Whitaker then told the defendant that the word on the street was that the defendant had access to other guns, including an Uzi automatic machine gun. According to Whitaker's tes-

[1] *Miranda* v. *Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

timony, when he asked the defendant what guns he had, the defendant denied ownership of an Uzi, but told Whitaker that he had "a .45, an automatic rifle, and some other handguns." At this point in the conversation, another police officer interrupted the two men, and the conversation ended.

The defendant's claim of error rests on his contention that because the state failed to present any evidence that the defendant had waived his *Miranda* rights, the trial court's admission of his postarrest statement violated his privilege against self-incrimination.

We first note that although the defendant objected to this testimony on the basis of relevance, he failed to object or take exception to the admission of the postarrest statement on constitutional grounds. Having failed to preserve the precise claim for appeal, he now seeks *Evans* review. "While we generally do not review claims of error which have not first been presented to and ruled upon by the trial court, we will review unpreserved claims of error when the record adequately supports a claim that the defendant has been deprived of a fundamental constitutional right and a fair trial. *State* v. *Smith,* 200 Conn. 465, 475, 512 A.2d 189 (1986); *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973)." *State* v. *Chung,* 202 Conn. 39, 47, 519 A.2d 1175 (1987). We conclude that review is warranted on this claim.

The defendant contends that Whitaker's questioning amounted to custodial interrogation, the response to which was inadmissible without proof of a waiver of the defendant's *Miranda* rights. "Custodial interrogation means questioning initiated by law enforcement officers after a person has been taken into custody or deprived of his freedom of action in any significant way." *State* v. *Vitale,* 197 Conn. 396, 411, 497 A.2d

956 (1985), citing *Miranda* v. *Arizona,* 384 U.S. 436, 444, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

It is undisputed that the defendant was in custody and that Whitaker initiated the conversation with him. The state contends, however, that the questioning by Whitaker did not constitute interrogation. "[T]he term 'interrogation' under *Miranda* refers both to express questioning and any words or actions on the part of the police ' "that the police should know are reasonably likely to elicit an incriminating response from the suspect." ' [*State* v. *Vitale,* supra, 411–12], quoting *Rhode Island* v. *Innis,* 446 U.S. 291, 301–302, 100 S. Ct. 1682, 64 L. Ed. 2d 297 (1980)." *State* v. *Burak,* 201 Conn. 517, 531, 518 A.2d 639 (1986). We would have to suspend reason to conclude that Whitaker's express questioning of the defendant, who was a suspect in two shootings, concerning what guns the defendant had is not questioning "likely to elicit an incriminating response." We conclude that Whitaker's exchange with the defendant constituted custodial interrogation.

The state argues, however, that the defendant's statement and his failure affirmatively to invoke his constitutional rights constituted a waiver of those rights. "A statement made by a defendant during the course of a custodial interrogation is admissible upon proof that he knowingly, intelligently and voluntarily waived his rights to remain silent and to the presence of an attorney." *State* v. *Householder,* 7 Conn. App. 1, 7, 507 A.2d 1012 (1986). " 'In order to prove that the defendant has effectively waived his privilege against self-incrimination, the state must prove, by a preponderance of the evidence; *Lego* v. *Twomey,* 404 U.S. 477, 489, 92 S. Ct. 619, 30 L. Ed. 2d 618 (1972); *State* v. *Wilson,* 183 Conn. 280, 286–87, 439 A.2d 330 (1981); *State* v. *Derrico,* 181 Conn. 151, 162, 434 A.2d 356, cert. denied, 449 U.S. 1064, 101 S. Ct. 789, 66 L. Ed. 2d 607 (1980); that the defendant knowingly and

intelligently waived his constitutional right to remain silent. *North Carolina* v. *Butler,* 441 U.S. 369, 373, 99 S. Ct. 1755, 60 L. Ed. 2d 286 (1979); *Johnson* v. *Zerbst,* 304 U.S. 458, 464, 58 S. Ct. 1019, 82 L. Ed. 1461 (1938). Waiver is not conclusively established by demonstrating that *Miranda* warnings were given and understood.' *State* v. *Harris,* [188 Conn. 574, 579–80, 452 A.2d 634 (1982), cert. denied, 460 U.S. 1089, 103 S. Ct. 1785, 76 L. Ed. 2d 354 (1983).]" *State* v. *Gray,* 200 Conn. 523, 533, 512 A.2d 217, cert. denied, 479 U.S. 940, 107 S. Ct. 423, 93 L. Ed. 2d 373 (1986). In addressing this issue, we must presume that the defendant did not waive his constitutional rights. Id. The state may prove waiver by a course of conduct as well as by an express statement. *State* v. *Barrett,* 205 Conn. 437, 450, 534 A.2d 219 (1987); *State* v. *Wilson,* 183 Conn. 280, 284, 439 A.2d 330 (1981). In *Wilson,* the Supreme Court reviewed the defendant's course of conduct that resulted in an oral confession. The court held that "there is not one scintilla of evidence of any verbal or physical indication by the defendant that he either wanted to waive or did, in fact, waive his rights. . . . The only fact from which waiver might conceivably be inferred is the actual speaking of the inculpatory remarks by the defendant; but that is not enough. A valid waiver cannot be presumed 'simply from the fact that a confession was in fact eventually obtained.' *Miranda,* supra, 475." (Citation omitted.) *State* v. *Wilson,* supra, 286.

This reasoning applies to the defendant's statement at issue in the present case. There is nothing in the record, other than the alleged statement, to indicate that the defendant wanted to or in fact did waive his right against self-incrimination.

Although not raised by the state, there is another theory under which the defendant's statements, although taken in violation of his *Miranda* rights, might be

admissible at trial and that is for the purpose of impeaching the credibility of the defendant. "Statements of a defendant which have been obtained after a failure to comply with the requirements for an effective waiver of the right to counsel or the privilege against self-incrimination may be used in cross-examining him after he has taken the witness stand at the trial. *United States* v. *Havens,* 446 U.S. 620, 100 S. Ct. 1912, 64 L. Ed. 2d 559 (1980); *Harris* v. *New York,* 401 U.S. 222, 91 S. Ct. 643, 28 L. Ed. 2d 1 (1971)." *State* v. *Nardini,* 187 Conn. 513, 517–18, 447 A.2d 396 (1982). Such inculpatory statements may be used for impeachment purposes, however, only if "the trustworthiness of the evidence satisfies legal standards"; *Harris* v. *New York,* supra, 224; and the court gives a proper limiting instruction. *Walder* v. *United States,* 347 U.S. 62, 64, 74 S. Ct. 354, 98 L. Ed. 503 (1954); see also *United States* v. *Havens,* supra, 623; *Harris* v. *New York,* supra, 223.

It is clear from the state's offer of proof that it intended to present Whitaker's testimony to impeach the credibility of the defendant's statement on cross-examination that the nine millimeter gun seized from him upon his arrest was the only gun he had.[2] The defense introduced the gun seized from the defendant in response to expert testimony produced by the state. A ballistics expert had testified that although seven shell casings found at the scene of the Davis shooting were all from the same nine millimeter gun, and spent

[2] The defendant's pretrial statement was not raised on cross-examination of the defendant, but rather by the state's direct examination of Whitaker on rebuttal. This fact does not, however, affect the admissibility of the statement. See *Oregon* v. *Hass,* 420 U.S. 714, 716–17, 95 S. Ct. 1215, 43 L. Ed. 2d 570 (1975). Also, the fact that the defendant's statement at trial, that he had no other guns, was elicited on proper cross-examination rather than on direct, is of no consequence to its admissibility. *United States* v. *Havens,* 446 U.S. 620, 627, 100 S. Ct. 1912, 64 L. Ed. 2d 559 (1980).

bullets found on the floor of Davis' car and removed from Garrett's knee were also nine millimeter, the gun seized from the defendant, although a nine millimeter, was not the gun that fired the casings and could not be proved to be the gun that fired either of the bullets. Thus, the defendant's statement that he only had one gun, the one seized upon his arrest, which he testified was the one he had on his person but never fired during the Garrett shooting, was designed to show that he did not have the gun used in either shooting. Clearly, then, the statement that he did have other handguns could be viewed as affecting the jury's opinion of the defendant's credibility.

The "trustworthiness" standard appears to require that the statement admitted for impeachment purposes not be involuntary or coerced. See *Oregon* v. *Hass,* 420 U.S. 714, 716–17, 95 S. Ct. 1215, 43 L. Ed. 2d 570 (1975). There is no evidence before us on the issue of the voluntariness of the statement, but a determination of that issue is not required for the disposition of the defendant's claim. Even assuming the statement was not coerced, we conclude that the trial court's instruction concerning the defendant's pretrial statement was constitutionally impermissible.

Although neither the defendant nor the state requested a jury instruction concerning the admission of the pretrial statement, the court gave the following instruction: "A statement made by a defendant, and there was a statement that you heard in testimony yesterday, other than that—a statement made by the defendant made at a time other than the trial may be an admission. An admission as applied to criminal cases is the avowal or acknowledgement of a fact or of circumstances from which guilt may be inferred intend[ed] to prove the offense charged when considered with the rest of the evidence but not amounting to a confession of guilt.

"The accused, in this case, took the stand and testified. In weighing the testimony of an accused person, you should apply the same principles by which the testimony of other witnesses is tested. And that, necessarily, involves a consideration of his interest in the outcome of the case. You consider the importance to him of the outcome of the trial. An accused person, having taken the witness stand, stands before you then just like any other witness and is entitled to the same consideration and must have his testimony measured the same way as any other witness including interest in the verdict which you are about to render.

"If an accused should attempt to make false statements respecting himself and his conduct concerning the matter on trial, you may consider this as evidence tending to show a guilty connection by the accused with the crime charged."

This instruction, which clearly allowed the jury to consider the pretrial statement as evidence of guilt rather than for the proper limited purpose of impeaching the defendant's credibility, was constitutionally impermissible. The state contends, however, that any error in admitting this statement was harmless. We disagree. "If [an] instructional error is constitutional, the state has the appellate burden of establishing that there is *no reasonable possibility* that the jury was misled. *State* v. *Shifflett,* [199 Conn. 718, 754, 508 A.2d 748 (1986)]; *State* v. *Mason,* [186 Conn. 574, 585–86, 442 A.2d 1335 (1982)]; *State* v. *Greene,* 11 Conn. App. 575, 581, 528 A.2d 855, cert. denied, 205 Conn. 804, 531 A.2d 938 (1987)." (Emphasis in original.) *State* v. *Coleman,* 14 Conn. App. 657, 678, 544 A.2d 194, cert. denied, 208 Conn. 815, 546 A.2d 283 (1988).

The jurors had the following evidence before them when the court instructed them on the law: (1) The defendant's testimony that he was at the scene of the

Garrett shooting with a nine millimeter gun in his belt which he never pulled out; (2) the defendant's testimony that the gun seized from him upon his arrest was the same gun he had during the Garrett shooting; (3) the defendant's testimony that that was the only gun he had; (4) the testimony of a ballistics expert stating that he could not link the portion of the nine millimeter bullet removed from Garrett's knee to the gun seized from the defendant; and (5) Whitaker's testimony that the defendant stated that he had "some other handguns."

The erroneous instruction allowed the jury to consider the defendant's pretrial statement as "an admission . . . of a fact . . . from which guilt may be inferred, intend[ed] to prove the offense charged . . . ." This means that the jurors could find that the defendant "admitted" to having other handguns, and from this admission they could infer that he had another nine millimeter handgun that could have been used to shoot the victim. We conclude that the state has not sustained the burden of establishing that there is no reasonable possibility that the jury was misled by this erroneous instruction.

There is error and the judgment of conviction in appeal No. 6859 must be set aside and a new trial ordered.

### Appeal No. 6858

In this case, the jury could have found the following facts. On the evening of October 7, 1986, Fonzie Davis was driving on Stratford Avenue in Bridgeport looking for his friend, Glenda. Davis found Glenda, but noticed that she began to run away as he approached. Davis then noticed the defendant, a person he had known for approximately five years, near his car. Davis testified that an altercation immediately ensued during which the defendant demanded that Davis hand over the two gold chains he was wearing around his

neck. Davis further testified that he foiled the robbery attempt by speeding away in his car at which time the defendant fired nine or ten shots at him, one of which struck him in the shoulder area. Davis drove to Park City Hospital where he stayed for one and one-half days recuperating from the injury which was not life threatening. Davis later went to the police station and gave a written statement identifying the defendant as his assailant.

Police testimony at trial revealed that seven nine millimeter shell casings were found in the area of Hollister and Stratford Avenues where the shooting had taken place. The police also found a spent nine millimeter bullet on the floor of the victim's car behind the driver's seat. The defendant was subsequently arrested pursuant to a warrant for the shooting of Davis.

The defendant raises the following claims of error: (1) the defendant's convictions for both attempted assault in the first degree and assault in the second degree violated his federal and state rights against double jeopardy and his right to due process of the law under the Connecticut constitution and (2) the same evidentiary claim of error raised in appeal No. 6859, that the trial court erred in admitting the defendant's postarrest custodial statement.

The defendant's claim of error in the admission of his postarrest statement taken in violation of his *Miranda* rights is the same claim as that made and decided in appeal No. 6859, supra. Our conclusion that there was harmful error in the court's instruction regarding the defendant's statement applies to this appeal as well, and we therefore remand this case for a new trial.

The evidence before the jury in this case when it received the court's erroneous instruction was (1) that the victim had been shot with a nine millimeter hand-

gun, (2) that the defendant, when arrested, had a nine millimeter gun in his possession, (3) that the ballistics expert testified that the gun seized from the defendant was not the one that fired the shell casings found at the scene and that the spent bullet found in the victim's car could not be linked with that gun, (4) that the defendant testified that the only gun he had was the one seized upon his arrest, and (5) that Whitaker testified that the defendant had told him he had a .45, a rifle and "some other handguns." The jury also had before it the defendant's testimony that he was not at the scene of the Davis shooting.

The erroneous instruction misled the jurors in this case as well by allowing them to consider the defendant's pretrial statement as an admission from which they could infer his guilt by inferring that one of the other handguns the defendant said he had could have been the one used to shoot the victim. We again conclude that the state has not, and indeed on the facts of this case could not have, sustained its burden of proving that there is no reasonable possibility that the jury was misled by the erroneous instruction.

Because we cannot speculate as to how the state will charge the defendant on the retrial of this case, we do not reach the defendant's double jeopardy and due process claims.

There is error on each appeal, the judgments are set aside and the cases are remanded for new trials in accordance with this opinion.

In this opinion the other judges concurred.