STATE OF CONNECTICUT *v.* WENDELL IRVING
(9677)

DALY, LAVERY and HEIMAN, Js.

280

Argued December 6, 1991—decision released April 7, 1992

*Leopold P. DeFusco,* special public defender, for the appellant (defendant).

*Carolyn K. Longstreth,* assistant state's attorney, with whom were *James Turcotte,* assistant state's attorney, and, on the brief, *Michael Dearington,* state's attorney, for the appellee (state).

LAVERY, J. After a jury trial, the defendant was convicted of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) and failure to appear

in the first degree in violation of General Statutes § 53a-172. In this appeal, the defendant claims that the trial court improperly (1) allowed the state to introduce his statements to a police officer without first requiring the state to prove that the officer had properly advised him of his rights and that the defendant had waived them, (2) refused to allow cross-examination of the victim concerning a felony charge pending against her, and (3) permitted the state to cross-examine him concerning a January 6, 1978 robbery conviction for the purpose of impeaching his credibility. We affirm the judgment of the trial court.

The jury could reasonably have found the following facts. In the early morning hours of March 12, 1989, the victim went downstairs in her apartment to investigate a noise in her kitchen. There, she found the defendant and a woman she knew as Ray. The victim ordered them to leave the apartment, but they refused. The defendant then grabbed the victim and dragged her upstairs, where, for the next two hours, he sexually assaulted her. During the sexual assault, Ray locked the defendant and the victim in the bedroom, disconnected all the telephones, and looted the apartment. Ray then fled from the scene.

After the assault, the defendant apologized to the victim, and asked her to tell the police that someone else had assaulted her. The victim agreed to do so. The defendant then helped the victim connect her telephone, and she called the police. When the police arrived, the victim told them that she had been sexually assaulted, and her apartment had been burglarized. She further told the police that she had called the defendant after the assault occurred. One of the officers, Detective John Flynn, then took the victim to the hospital. En route, the victim told Flynn that the defendant was her assailant. At the same time, the defendant was assist-

ing other officers in their search for Ray. Flynn transmitted this information to the officers who were with the defendant.

After leaving the victim at the hospital, Flynn went to police headquarters and interviewed the defendant, who had been arrested on the basis of the information from the victim. The defendant denied having sexual relations with the victim. After Flynn told the defendant how serious the matter was, however, he admitted having had consensual sexual relations with the victim.

At trial, Flynn testified that after he advised the defendant of his constitutional rights, the defendant indicated that he understood his rights and that he would speak with Flynn. Flynn then interviewed the defendant. According to Flynn, the defendant first denied having sexual relations with the victim, but later admitted having had consensual sexual relations with her. When he took the stand, however, the defendant denied having sexual relations with the victim, stating that he "did and didn't" have sex with her, because he had paid the victim for sex, but he was unable to complete the act because Ray entered the room. On cross-examination, the defendant denied that Flynn had advised him of his constitutional rights before questioning.

The defendant first claims that the trial court improperly allowed the state to introduce statements made by the defendant to Flynn without first requiring the state to prove that Flynn had properly advised the defendant of his rights and that the defendant had waived them. Such advisement and waiver is necessary when a suspect is subjected to custodial interrogation. *Miranda* v. *Arizona,* 384 U.S. 436, 478–79, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966); *State* v. *Madera,* 210 Conn. 22, 48–49, 554 A.2d 263 (1989). The defendant

failed to raise this claim at trial either by way of an objection to the admission of Flynn's testimony or by pressing a motion to suppress any statement he made to Flynn. He thus seeks review under *State* v. *Golding,* 213 Conn. 233, 567 A.2d 823 (1989), and *State* v. *Evans,* 165 Conn. 61, 327 A.2d 576 (1973).

"The state has the burden of proving by a preponderance of the evidence that the defendant knowingly and intelligently waived his *Miranda* rights, including his right to remain silent. . . . A valid waiver is defined, in accordance with the well known test of *Johnson* v. *Zerbst,* 304 U.S. 458, 464, 58 S. Ct. 1019, 82 L. Ed. 1461 (1938), as the intentional relinquishment or abandonment of a known right. . . . [T]he record need not show a specific expression of relinquishment of rights. . . . Instead, a waiver may be 'inferred from the actions and words of the person interrogated' . . . and from his 'course of conduct.' . . ." (Citations omitted.) *State* v. *Barrett,* 205 Conn. 437, 449–50, 534 A.2d 219 (1987). Although we are required to give every reasonable presumption against the waiver of a fundamental constitutional right; see *Johnson* v. *Zerbst,* supra; *In re Manuel R.,* 207 Conn. 725, 739, 543 A.2d 719 (1989); *State* v. *Smith,* 18 Conn. App. 368, 374, 558 A.2d 257 (1988); the defendant in the present case must still satisfy each of the conditions set forth in *State* v. *Golding,* supra, if we are to review this unpreserved constitutional claim.[1]

---

[1] A defendant "can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail." *State* v. *Golding,* 213 Conn. 233, 239–40, 567 A.2d

Under the first *Golding* condition, the defendant can prevail only if there is an adequate record for our review. *State* v. *Golding,* supra, 240. The burden of providing an adequate record rests on the defendant. *State* v. *Leary,* 217 Conn. 404, 416, 587 A.2d 85 (1991); *State* v. *Suarez,* 23 Conn. App. 705, 708, 584 A.2d 1194 (1991). "If the facts revealed by the record are insufficient, unclear or ambiguous as to whether a constitutional violation has occurred, we will not attempt to supplement or reconstruct the record, or to make factual determinations, in order to decide the defendant's claim." *State* v. *Golding,* supra. We conclude that the defendant's claim does not merit review under *Golding* because the record was not properly preserved.

In *State* v. *Anderson,* 209 Conn. 622, 553 A.2d 589 (1989), our Supreme Court considered whether a criminal defendant had waived his right to counsel. In that case, the defendant allegedly requested counsel on two occasions. Id., 629–31. At trial, however, the only evidence presented on the waiver issue was the testimony of two officers that, after the defendant was given his *Miranda* warnings, he stated that he might want to call his attorney at some future time. Id., 629. The defendant argued that the admission of his statements deprived him of his constitutional rights and a fair trial. Id., 625. The court declined to review the defendant's claim because the record did not adequately support his claim. Id., 634.

On direct examination, Flynn testified on the advisement and waiver issue as follows:
"[Prosecutor]: Upon you interviewing the defendant, what was the first thing you did, Detective?
"[Flynn]: I advised him of his constitutional rights.

823 (1989). The conditions as set forth in *Golding,* need not be considered in any particular order. *State* v. *Shaw,* 24 Conn. App. 493, 497, 589 A.2d 880 (1991).

"[Prosecutor]: Okay. And did you ask him whether he understood these rights?

"[Flynn]: Yes.

"[Prosecutor]: Did you ask him if he would speak to you?

"[Flynn]: Yes, I did.

"[Prosecutor]: Did he indicate that he would speak to you?

"[Flynn]: He indicated that he understood his rights and he was willing to talk to me."

On cross-examination, the defendant testified as follows:

"[Prosecutor]: Then, at that point you were brought down for processing in the New Haven police department, is that correct?

"[Defendant]: Yes, I was.

"[Prosecutor]: And there came a time when Detective Flynn came to see you, is that correct?

"[Defendant]: Yes, he did. . . .

"[Prosecutor]: Now, he advised you of your rights at that point, is that correct?

"[Defendant]: No one advised me of nothing.

"[Prosecutor]: Remember, throughout the whole night?

"[Defendant]: No one advised me of nothing.

"[Prosecutor]: They never read off a blue card or a piece of paper what your rights are?

"[Defendant]: No, they didn't."[2]

"Had the defendant objected to the detective's testimony at trial or moved to suppress it on the ground he now claims, a hearing or questioning would have provided a factual basis for his claim and the record would have been properly preserved." *State* v. *Anderson,*

---

[2] Out of the presence of the jury, the following exchange occurred.

"[The Court]: Is it your claim that your client did not receive his *Miranda* warnings, is that your claim? . . .

"[Defense Counsel]: That's not my claim at this moment only because it's news to me."

supra, 633. In this case, the defendant failed to object to Flynn's testimony.[3] On the basis of the undeveloped state of the record in this case, we cannot, without becoming factfinders, determine whether the defendant waived his *Miranda* rights.

In addition, the defendant filed a motion for discovery requesting any relevant statements made by the defendant that the state intended to use at trial. The trial court granted this motion and the state complied. Also, the defendant filed a motion to suppress the statements he had made to Flynn, stating in the motion that the statements were made without a knowing, voluntary and intelligent waiver of his privilege against self-incrimination. There was no hearing on this motion and it was not pursued by the defendant.

The foregoing makes it clear that, at the time of trial, defense counsel was in fact aware of the advisement and waiver issue. Just as the defendant in *State* v. *Anderson,* supra, failed to file a motion to suppress his statements or to object to their admission, the defendant in the present case failed to follow through on the motion to suppress his statements or to object to their admission. The defendant made a tactical choice to allow his statements to Flynn to come before the jury in order to bolster his testimony at trial—that he "did and didn't" have sexual relations with the victim—to show that his version of the events was consistent at all times. "The defendant cannot now claim 'foul'

---

[3] The defendant asserts that his claim is identical to that of the defendant in *State* v. *Rollins,* 20 Conn. App. 27, 564 A.2d 318, cert. denied, 213 Conn. 803, 567 A.2d 833 (1989), in which we ordered a new trial. In *Rollins,* however, there was nothing in the record to indicate a *Miranda* warning was given. Id., 33. Consequently, the defendant's claim was reviewed because the defendant was deprived of a fundamental constitutional right and a fair trial. Id., 31. In the present case, Flynn testified that he advised the defendant of his constitutional rights and that the defendant waived them.

because of the admission of evidence which he allowed in for tactical purposes. . . ." (Citations omitted.) Id., 633. Because the record was not properly preserved, and because the defendant has failed to demonstrate that he was deprived of a fair trial, his first claim does not merit review under *State* v. *Golding,* supra.

The defendant next claims that the trial court improperly limited his cross-examination of the victim, thus abridging his right to confrontation under the sixth amendment to the federal constitution. The following facts are pertinent to this claim.

At the time of trial, there was an outstanding warrant against the victim for failure to appear in the first degree. Although the victim knew of the warrant, service of process had not yet occurred, and the victim had not yet been arrested for or charged with the offense. Outside the presence of the jury, defense counsel sought permission to question the victim, before the jury, on the failure to appear charge and on the outstanding warrant so that the jury might consider the matter as it related to the victim's truthfulness and veracity. The trial court invoked the victim's fifth amendment rights on her behalf,[4] and denied the defendant's request, reasoning that the outstanding warrant for failure to appear was not relevant to truthfulness and veracity. The defendant excepted to this ruling.[5]

[4] "To sustain the privilege against self-incrimination, it need only be evident from the implications of the question, in the context in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result." *State* v. *Erhardt,* 17 Conn. App. 359, 364, 553 A.2d 188 (1989). The privilege against self-incrimination depends on the mere possibility of prosecution. *State* v. *Williams,* 200 Conn. 310, 319, 511 A.2d 1000 (1986). Thus, a charge could be considered "pending" for fifth amendment purposes, while at the same time it may be considered not "pending" for the purpose of ascertaining the truthfulness and veracity of a witness.

[5] The defendant was permitted to cross-examine the victim concerning a pending felony charge of possession of narcotics for the purpose of

The defendant asserts that his right to confrontation under the sixth amendment to the federal constitution was denied because he was not allowed to question the victim concerning the failure to appear charge as well. The defendant argues that he should have been permitted to question the victim on the outstanding warrant in the failure to appear matter in order to determine whether the state had promised her consideration in exchange for her testimony against him. At the hearing, however, defense counsel failed to articulate this argument. Instead, he argued that this line of questioning was proper to attack the victim's truthfulness and veracity. Accordingly, our review of this claim is governed by *State* v. *Golding,* supra, because the defendant seeks to raise a constitutional claim that was not raised at trial.[6]

"Although cross-examination is the most effective means of confronting witnesses, not all limitations of that right are of constitutional dimension. *State* v. *Lewis,* [220 Conn. 602, 622, 600 A.2d 1330 (1991)]. The constitutional standard is met when defense counsel is permitted to expose to the jury the facts from which the jurors, as the sole triers of the facts and credibility, can appropriately draw inferences relating to the reliability of the witness. *State* v. *Vitale,* 197 Conn. 396, 402, 497 A.2d 956 (1985). Whether to permit cross-examination as to particular acts of misconduct to show a lack of veracity lies largely within the discretion of

impeaching her credibility. At trial, defense counsel asked the victim whether the state had promised any favorable disposition of this pending felony charge in exchange for her testimony against the defendant. The victim denied any such bargain with the state.

The trial court properly refused to allow the defendant to question the victim on the conduct underlying the felony charge, because narcotics offenses are not relevant to prove truthfulness or veracity. *State* v. *Dobson,* 221 Conn. 128, 137, 602 A.2d 977 (1992); *State* v. *Geyer,* 194 Conn. 1, 14, 480 A.2d 489 (1984).

[6] See footnote 1, supra.

the trial court. Id., 401. Where the trial court allows significant cross-examination concerning a witness' veracity, it cannot be said that the constitutional right to confrontation is implicated." (Internal quotation marks omitted.) *State* v. *Pinnock,* 220 Conn. 765, 778–79, 601 A.2d 521 (1992); *State* v. *Dobson,* 221 Conn. 128, 137, 602 A.2d 977 (1992).

In the present case, the trial court refused to allow cross-examination regarding the failure to appear felony charge for which the warrant had not yet been served. Because the failure to appear charge was not pending in that the victim had yet to be arrested and charged with the offense, we cannot say that the trial court abused its discretion in limiting the defendant's cross-examination of the victim so as to exclude questioning regarding this matter. Consequently, the defendant has failed to demonstrate a constitutional violation that clearly deprived him of a fair trial, and we decline to review this claim further.

Finally, the defendant claims that the trial court abused its discretion in permitting the state to cross-examine him concerning a January 6, 1978 robbery conviction for the purpose of impeaching his credibility because at the time of trial this conviction was more than ten years old. General Statutes § 52-145 (b) provides that felony convictions may be shown for the purpose of attacking a witness' credibility.[7] " 'Three factors should be examined to determine whether a prior criminal conviction . . . has been [properly] admitted: (1) the extent to which admission is likely to prejudice the defendant's cause; (2) the significance of the prior crime as bearing on the defendant's truthfulness; and (3) the remoteness in time of the prior con-

---

[7] General Statutes § 52-145 (b) provides: "A person's interest in the outcome of the action or his conviction of crime may be shown for the purpose of affecting his credibility."

viction.' *State* v. *Geyer,* [194 Conn. 1, 11, 480 A.2d 489 (1984)]; see also C. Tait & J. LaPlante, Connecticut Evidence § 7.21.6 (2d Ed. 1988)." *State* v. *Rivera,* 221 Conn. 58, 73, 602 A.2d 571 (1992); *State* v. *Nardini,* 187 Conn. 513, 522, 447 A.2d 396 (1982); *State* v. *McClain,* 23 Conn. App. 83, 85, 579 A.2d 564 (1990).

"The trial court, because of its intimate familiarity with the case, is in the best position to weigh the relative merits and dangers of any proffered evidence." *State* v. *Geyer,* supra, 13; *State* v. *Thomas,* 15 Conn. App. 197, 205, 543 A.2d 1356 (1988). In the present case, the substitute information charged the defendant with sexual assault in the first degree. Because the prior robbery conviction is dissimilar to the offense charged, the prejudice to the defendant was not great.[8] Second, it is undisputed that a robbery conviction bears on truthfulness. "[L]arceny, which is the underlying crime in any robbery, bears directly on the credibility of the witness-defendant. The defendant's robbery conviction, therefore, was highly probative of his truthfulness and veracity." *State* v. *Crumpton,* 202 Conn. 224, 229, 520 A.2d 226 (1987). Finally, "[a] prior conviction which is more than ten years old may, under some circumstances, retain some probative value which is minimally sufficient to overcome any marginal prejudice, and may be admissible, therefore, without a wholly unreasonable exercise of a trial court's discretion." *State* v. *Kuritz,* 3 Conn. App. 459, 463, 489 A.2d 1053 (1985). In the present case, the trial court examined the proffered conviction under the factors as set forth in *State* v. *Nardini,* supra, and decided to allow its admission. We conclude that the trial court's

---

[8] The court instructed the jury that the prior robbery conviction was relevant only as to the credibility of the defendant. The court further specifically instructed the jury to disregard the evidence suggesting that a burglary occurred in this case and the fact that the defendant was initially charged with burglary.

decision on this matter was not an unreasonable exercise of discretion.

The judgment is affirmed.

In this opinion the other judges concurred.